**Ethel Rosalee WHITE, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 22303.

United States Court of Appeals
District of Columbia Circuit.

Nov. 22, 1968.

Messrs. Leonard M. Patterson, Jr. and William H. Fitz, Washington, D. C., were on the pleadings for appellant.

Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and James A. Treanor, III, Asst. U. S. Attys., were on the pleadings for appellee.

Before BAZELON, Chief Judge, DANAHER and ROBINSON, Circuit Judges, in Chambers.

## ORDER

PER CURIAM.

This cause came on for consideration on the record on appeal from an order of the District Court denying appellant's pretrial release on bail, and the Court having considered the record on appeal, appellant's memorandum, appellee's responsive memorandum, and the District Judge's statement of reasons for denying release, it is

Ordered by the Court that the order appealed from is reversed and the case is remanded to the District Court with direction that appellant be admitted to pretrial bail upon her execution and filing with the clerk of the District Court of a personal recognizance in the amount of $100, without security or deposit, conditioned upon her appearance pursuant to Rule 46(d) of the Federal Rules of Criminal Procedure and upon the following:

(1) Appellant shall report to the Probation Officer of the District Court on such terms as the latter may impose.

(2) Appellant shall not leave the Washington metropolitan area without leave of the District Court.

(3) Upon release, appellant shall obtain suitable employment.

(4) Appellant shall surrender forthwith to the custody of the United States Marshal for the District of Columbia when properly called upon to do so, to be dealt with and proceeded against in her case according to law.

(5) Such release shall be subject to the provisions of 18 U.S.C. § 3146.

The Probation Officer is requested to promptly inform this Court of any mat-

ters which may come to his attention during his supervision of appellant which may adversely affect appellant's continued enlargement on bail.

Circuit Judge DANAHER dissents from the foregoing order for the reasons set forth in his attached statement.

PER CURIAM:

The District Court denied appellant's application for pretrial release following her indictment for first-degree murder and assault with intent to kill. When her appeal first reached us, we remanded the case to the District Court for a statement of the reasons for denying release.[1] Now, with the benefit of the District Judge's statement of reasons, we identify the conditions of release which would assure that appellant will not flee or pose a danger to the community.[2] We accordingly reverse with the direction that appellant be released on those conditions, which are specified in the foregoing order.

In his statement of reasons, the District Judge concluded that appellant's release would present a risk of flight from this jurisdiction and would threaten harm to the community. In pointing to these potentialities, he relied heavily upon the "nature and circumstances of the offense charged" and "the weight of the evidence against the accused."[3] Noting that the Government has twelve eyewitnesses in this case, the District Judge stated:

"The government expects to prove that the police officers had one handcuff on the co-defendant [appellant's husband] when this defendant [appellant] * * ran from the porch and jumped on the officer's back. She is alleged to have held the officer while he was shot six times with his own gun."

The transcript of appellant's preliminary hearing presents a different account of the events portrayed in this crucial last sentence. The Government's major eyewitness at that hearing related uncontradictedly that appellant did join in the melee, but in a limited manner. According to this witness, appellant was only attempting to pull the officer away from her husband by tugging at the back of the officer's shirt. The witness further reported that "while [appellant's husband and the officer] were tussling * * * she got thrown out [of] the way; she was pushed back . * * *" It was only after appellant had allegedly been thrown from the immediate scuffle that the witness heard the shot being fired. And the Government's narration of the events does not vary significantly as to appellant's alleged involvement in the affair.[4]

This court, of course, cannot speculate as to which version of the incident is true. It nevertheless must consider the nature of appellant's role in the fray in order to determine her potential for future danger. Balancing the probabilities, we are unable to defend the conclusion that appellant's attempted defense of her husband portends a risk of danger in this case. This result is fortified by appellant's record apart from this case. She has no prior criminal record and the Government has been unable to suggest any other factor which would indicate that she is dangerous.

The District Judge apparently rested his finding of a risk of flight upon the severity of the sentence that could be imposed on appellant if she were convicted on the murder charge. If this factor were alone determinative, however, release would never be possible in a capital case, and the statutory scheme that Congress so carefully established for such

1. This action was taken pursuant to Weaver v. United States, 131 U.S.App.D.C. 388, 405 F.2d 353 (1968) (Oct. 4, 1968).

2. 18 U.S.C. § 3148 (Supp. III, 1965-67).

3. 18 U.S.C. § 3146(b) (Supp. III, 1965-67); F.R.CRIM.P. 46(a) (1).

4. The Government's opposition memorandum in this court relates, not that appellant "held the officer while he was shot," but that she "stood by and watched" the shooting. Thus this account also differs importantly from that presented by the District Judge.

cases [5] would be nullified completely. In evaluating the likelihood of flight, the potential penalty has relevance, but here we are much more persuaded by the stability of appellant's relationship to the community. She has lived in the District for about ten years, and has displayed a record of steady employment, the continuation of which upon release is assured. These community roots strongly dispute any threat of flight. To this we may add that she surrendered voluntarily to the police several hours after the incident giving rise to the indictment.

The District Judge's final comment indicates that appellant was "living in a common-law relationship with the co-defendant while her family by a previous marriage still resides in South Carolina." We perceive no connection between an individual's propensity for flight or his danger to the community, on the one hand, and the formal or even the legalistic aspects of his marital relationship on the other.

■ We give bail determinations by District Judges the deference they are due.[6] We affirm their rulings when, but only when, they are "supported by the proceedings below." [7] We have not found that support here. Though charged with a capital offense, appellant is presumptively releasable,[8] and that presumption has not been dispelled. Appellant ex-

presses willingness to abide reasonable conditions of release, a matter we have comprehensively explored. We conclude that the conditions specified in our order sufficiently obviate any risk of flight or potential danger to the community which appellant's pretrial release from custody would in any event entail.[9]

Reversed.

DANAHER, Circuit Judge (dissenting):

My colleagues here have ordered the pretrial release of this appellant notwithstanding that she stands charged with an offense punishable by death. I dissent. They assert that in their view—contrary to the position taken by the District Judge—the "appellant is presumptively releasable." I disagree, and, out of deference, I submit the following.

It has seemed to me that an element of confusion has crept into various of these bail-release situations due in part perhaps to an ad hoc approach, and alternatively to the way the statutes have been written. If I fail to convince my colleagues, I can at the very least clarify my own position.

## I

The Bail Reform Act of 1966 [1] was intended to revise practices relating to bail. An accused is not "needlessly" to be

---

5. 18 U.S.C. § 3148 (Supp. III, 1965–67). See also note 8, *infra*, and accompanying text.

6. Weaver v. United States, *supra* note 1, 131 U.S.App.D.C. at 389, 405 F.2d at 354.

7. 18 U.S.C. § 3147(b) (Supp. III, 1965–67).

8. Defendants accused of capital crimes "are presumptively to be released under section 3146. * * *" S.Rep. No. 750, 89th Cong., 1st Sess. 19 (1965); H.R. Rep. No. 1541, 89th Cong., 2d Sess. 15 (1965). "The Bail Reform Act," by the latter section, "creates a strong policy in favor of release on personal recognizance, and it is only if 'such a release would not reasonably assure the appearance of the person as required' that other conditions of release may be imposed."

Wood v. United States, 129 U.S.App. D.C. 143, 145, 391 F.2d 981, 983 (1968). In like fashion, Section 3148 provides, as to those charged with capital offenses no less than as to those seeking release pending appeal, "that appellant should be released unless no terms or conditions of release will reasonably assure that he will not flee or pose a danger to any person or to the community, or unless the appeal is frivolous or taken for delay." United States v. Harrison, 131 U.S.App. D.C. 390, 405 F.2d 355 (1968) (Oct. 23, 1968) at 3.

9. Compare United States v. Harrison, 131 U.S.App.D.C. 390, 405 F.2d 355 (1968). (Oct. 23, 1968).

1. 18 U.S.C. §§ 3146–3152 (Supp. III, 1965–67).

detained when detention will serve "neither the ends of justice nor the public interest." Sections 3146 and 3147 detail the provisions applicable to release *in non-capital cases* prior to trial. Persons coming within these sections may properly be regarded as "presumptively releasable." To illustrate, Allen v. United States [2] demonstrates respecting a pretrial situation that an accused "presumptively releasable" under section 3146, may nevertheless be denied release and, under section 3147, an appeal from such an order "shall be affirmed if it is supported by the proceedings below." Thus, if the statement [3] of evidence in the release order and the order of the trial court on the accused's motion to amend will support the action denying release, that ends it. Often, the District Judge or the United States Commissioner may fail to state in writing the reasons for the action he has taken, and we have remanded in accordance with the provisions of section 3147(b).

## II

On the other hand, section 3148 deals with a completely different situation. It speaks of release *in capital cases* or *after* conviction. An excellent illustration of the problem presented where release is sought after conviction in a noncapital case may be found in Russell v. United States.[4] There, Judge Leventhal pointed out that a District Judge may order that the convict be detained, but he is authorized to enter that order on the ground that release of the accused would present a danger to the community. The District Judge could not in lieu of such a conclusion, enter an order requiring the posting of financial security which the accused is unable to provide. In short, the fixing of high money bail is no substitute for the statutorily authorized grounds for detention.

In addition to dealing with post-conviction situations, section 3148 makes specific provision respecting an accused "who is charged with an offense punishable by death." The section authorizes the detention of the accused if the judge believes any one or more of four grounds may exist: risk of flight, risk of danger, that the appeal is frivolous or the appeal has been taken for delay.

While the accused under section 3146 may be presumptively releasable, we look to the words of the statute, section 3148, for our guidance in capital cases. No such accused charged with an offense punishable by death is automatically brought within the provisions of section 3146. The judge must exercise a judgment. That judgment depends upon what the judge "has reason to believe." So it is that section 3148 provides that an accused in a capital case shall be treated in accordance with the provisions of section 3146

> *"unless the court or judge has reason to believe* that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community."  (Emphasis added.)

## III

When this appellant here sought release, we directed a remand that the District Judge might comply with the requirements of FED.R.APP.P. 9(a). Of course we knew that a person arrested for an offense punishable by death *may* be admitted to bail by a judge "in the exercise of discretion, giving due weight to the evidence and to the nature and circumstances of the offense." [5] The judge thereupon exhibited to us the basis upon which he rested his "reason to believe" that this accused should be detained. He concluded that in the light of the circumstances made known to him and the possibility of the death penalty, *there is a substantial risk of non-appearance or*

---

2. 128 U.S.App.D.C. 207, 386 F.2d 634 (1967); *compare* Wood v. United States, 129 U.S.App.D.C. 143, 391 F.2d 981 (1968), which also treats of a pretrial order under § 3146.

3. *See* FED.R.APP.P. 9(a) (1968).

4. 131 U.S.App.D.C. 44, 402 F.2d 185 (1968).

5. FED.R.CRIM.P. 46(a).

flight and that the appellant presents a danger to the community.

The respective parties have filed memoranda with us. It appears that on July 2, 1968, officers were investigating a robbery. In due course they attempted to place under arrest for that robbery one Johnnie White, Jr., with whom this appellant was then cohabiting, although she had a family in South Carolina. White had been pointed out by the robbery victim who lived in the same neighborhood as did the Whites. White fought the officers when they tried to take him into custody. As they were struggling the appellant ran up and tried to get the police away from White who was lying on the ground holding a police officer by the collar. This appellant apparently pulled on the shoulder of the officer who was over Johnnie White.

Thereupon, Dwayne White, son of Johnnie White, Jr., came along and entered the fray. The two male Whites managed to secure the service revolvers of the police and shot both officers as they lay on the ground. One officer then unarmed was slain and another was seriously wounded. This appellant had apparently made no effort to prevent the slaughter.

The Government contended: "It is clear that but for the intervening assault by Ethel the two police would easily have subdued Johnnie and that Dwayne would thus not have had an opportunity to make an offguard entrance into a police struggle with his father."

In my appraisal, the judge was justified in believing there existed grounds upon which to order that the accused be detained. It was a reasonable judgment which gave due weight to the evidence and to the nature and circumstances of the offense. Unless the judge had clearly abused his discretion or had erroneously arrived at his determination as a matter of law, his order should be supported. Both the Rule and the applicable statutes so contemplate.

Since I find no error in Judge Smith's determination, I think the District Court's order should be affirmed.