**UNITED STATES of America**

v.

**Thomas E. STANLEY, Appellant.**

**No. 71–1641.**

United States Court of Appeals, District of Columbia Circuit.

Aug. 14, 1972.

---

See also, United States v. Stanley, 150 U.S.App.D.C. 301, 464 F.2d 810 (1972).

Mr. Gary H. Simpson, Chevy Chase, Md., was on the motion for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry and Robert Alan Jones, Asst. U. S. Attys., were on the opposition to appellant's motion. Mr. Thomas A. Flannery, U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and ROBINSON and WILKEY, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This case is before the court on appellant's motion for release from custody pending his appeal from a conviction of violation of the federal narcotic laws.[1]

---

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the posses-

Appellant was arrested by police officers who, armed with a warrant, entered and searched an apartment wherein he and three others were present, and uncovered a substantial quantity of heroin and various items of narcotics paraphernalia.[2] An indictment was subsequently returned against appellant and two of the others,[3] and he was granted pretrial release on personal bond.[4] Some thirteen months later, following a ten-day trial, appellant was found guilty by a jury.

■ Upon return of the verdict, the trial judge directed that custody of appellant be resumed. At sentencing, the judge imposed a mandatory five-year term of imprisonment,[5] and refused to enlarge appellant pending his contemplated appeal. In denying bail,[6] the judge, relying on provisions of the District of Columbia Court Reform and Criminal Procedure Act of 1970 [7] setting standards for the District, ruled that appellant had not satisfied the criteria specified in that legislation.

■ Subsequent to the sentencing, this court held that applications for release of persons convicted in the District under federal criminal statutes having nationwide application, as was appellant,[8] must be considered under the Bail Reform Act of 1966 [9] and not the Court Reform and Criminal Procedure Act.[10] Thereafter appellant, having formalized an appeal from his conviction, moved the trial judge for reconsideration. The judge denied the motion and

sion to the satisfaction of the jury. . . ." 21 U.S.C. § 174 (1964). This provision, with others, has since been repealed by the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. 91–513, tit. III, § 1101(b)(3)(a), 84 Stat. 1292 (1970), although in consequence of a saving clause the conviction, if otherwise valid, is unaffected by the repeal. 84 Stat. 1292, 1294 (1970).

2. See note 55, *infra*.

3. In addition to the offense of which appellant was convicted, see note 1, *supra*, the two-count indictment against him also charged a violation of 26 U.S.C. § 4704 (a) (1964), since repealed, see note 1, *supra*, but a verdict of not guilty was rendered on that count. No indictment was returned against one of the persons in the apartment, and a motion for a judgment of acquittal was granted as to another. A third was convicted of a violation of § 4704(a) as well as of 21 U.S.C. § 174 (1964), see note 1, *supra*, and of possession of stolen mail, 18 U.S.C. § 1708 (1970).

4. Personal bond is a promise to pay a specified sum in the event of nonappearance. Personal recognizance is a promise, without a monetary penalty, to appear. Unlike conventional bail bond, neither entails a cash deposit. D. Freed & P. Wald, Bail in the United States: 1964, at 61–62 (1964).

5. See note 1, *supra*.

6. Unless modified by its context, the term "bail" is used herein to refer to any form of release from custody, with or without security, pending judicial proceedings.

7. The District of Columbia Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 (1970), D.C.Code § 23–1321 et seq. (Supp. V 1972), supersedes the Bail Reform Act, 80 Stat. 215 (1966), as amended, 18 U.S.C. § 3146 et seq. (1970), in the District of Columbia, D.C. Code § 23–1332 (Supp. V 1970), and provides that an appellant in a criminal case "shall be detained unless" it is found "by clear and convincing evidence that" he "is not likely to flee or pose a danger to any other person or to the property of others, and" that his appeal presents "a substantial question of law or fact likely to result in a reversal or an order for new trial." D.C.Code § 23–1325(c) (Supp. V 1972). As to the shift of burden, see H.R.Rep.No.91–907, 91st Cong., 2d Sess. 185–87 (1970).

8. See note 1, *supra*.

9. 80 Stat. 215 (1966), as amended, 18 U.S.C. § 3146 et seq. (1970). Release pending appeal from federal convictions is dealt with in 18 U.S.C. § 3148 (1970), quoted in relevant part *infra* note 12. Implementing provisions are Fed.R.Crim. P. 46(a)(2) and Fed.R.App.P. 9(b), the latter quoted in relevant part *infra* note 34.

10. United States v. Thompson, 147 U.S. App.D.C. 1, 452 F.2d 1333 (1971).

**580**

the bail application was renewed in this court.[11] We entered an order remanding the record to the District Court for an acceptable statement of the reasons which led the trial judge to keep appellant in confinement. Our order stated that this opinion for the court would follow.

I

 The Bail Reform Act requires release of a convicted defendant pending an appeal unless the appeal is frivolous or a procrastinating maneuver, or unless

there is reason to believe that no conditions of release will reasonably assure that he will not flee or pose a danger to another or to the community.[12] The Act thus reflects a policy strongly favoring posttrial as well as pretrial release,[13] but both its structure and its interpretation underscore the delicacy of the determinations which must precede any ruling on that score.[14] A conclusion as to whether "an appeal is frivolous or taken for delay"[15] demands a careful exploration into its potentialities on the merits and the seriousness of its underlying

11. See Fed.R.App.P. 9(b), quoted in relevant part *infra* note 34. These happenings were primarily responsible for appellant's lengthy post-conviction incarceration, to which the dissent refers, *post* p. 589.

12. "A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence or sentence review under section 3576 of this title or has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 [dealing with pretrial release] unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. . . . " 18 U.S.C. § 3148 (1970). Conditions imposable upon a release are specified in 18 U.S.C. § 3146(a) (1970).

13. Banks v. United States, 134 U.S.App. D.C. 254, 257, 414 F.2d 1150, 1153 (1969); White v. United States, 134 U.S.App.D.C. 14, 16 n. 8, 412 F.2d 145, 147 n. 8 (1969); Wood v. United States, 129 U.S.App.D.C. 143, 145, 391 F.2d 981, 983 (1968). See also Bandy v. United States, 81 S.Ct. 197, 198, 5 L.Ed.2d 218 (1960) (Mr. Justice Douglas); Hansford v. United States, 122 U.S.App.D.C. 320, 323, 353 F.2d 858, 861 (1965).

14. 18 U.S.C. § 3146(b) (1970) and Fed. R.Crim.P. 46(c) specify circumstances to be considered in making the determination: the nature and circumstances of the offense, the weight of evidence against the accused, his family ties, employment stat-

us, financial resources, character and mental condition, the length of his residence in the community, any prior criminal record, and any flight or failures to appear in court proceedings. For judges, of course, remains the often difficult task of assigning proper weight to these factors, singly and in combination, and in assessing the risks incidental to enlargement and the efficacy of an imposition of conditions to minimize them. See United States v. Forrest, 135 U.S.App. D.C. 350, 351–352, 418 F.2d 1186, 1187–1188 (1969); United States v. Jackson, 135 U.S.App.D.C. 207, 208 & n. 5, 417 F.2d 1154, 1155 & n. 5 (1969); United States v. Harrison, 131 U.S.App.D.C. 390, 392, 405 F.2d 355, 357 (1968), cert. denied, 396 U.S. 974, 90 S.Ct. 465, 24 L.Ed.2d 442 (1969). *Cf.* United States v. Cook, 143 U.S.App.D.C. 1, 442 F.2d 723 (1970); United States v. Bronson, 139 U.S.App.D.C. 379, 433 F.2d 537 (1970); White v. United States, *supra* note 13; Allen v. United States, 128 U.S.App.D.C. 207, 386 F.2d 634 (1967).

15. See note 12, *supra*. See generally Bowman v. United States, 85 S.Ct. 232, 13 L.Ed.2d 171 (1964) (Mr. Justice Douglas); Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962) (Mr. Justice Douglas); Di Candia v. United States, 78 S.Ct. 361, 2 L.Ed.2d 410 (1958) (Mr. Justice Harlan); Ward v. United States, 76 S.Ct. 1063, 1 L.Ed.2d 25 (1956) (Mr. Justice Frankfurter); United States v. Jackson, *supra* note 14, 135 U.S.App.D.C. at 208–210, 417 F.2d at 1155–1157 (1969); Weaver v. United States, 131 U.S.App.D.C. 388, 389, 405 F.2d 353, 354 (1968); Byrd v. United States, 130 U.S. App.D.C. 277, 400 F.2d 748 (1968); Vauss v. United States, 125 U.S.App.D.C. 23, 24, 365 F.2d 956, 957 (1966); Hansford v. United States, *supra* note 13.

purpose.[16] Save for situations where the unlikelihood of flight or community danger is relatively plain, the judicial decision hangs on the availability and capability of conditions to reduce those risks to a level of reasonable safety.[17] The Act directs that that determination be made on the basis of what the judge "has reason to believe," [18] and the process of deriving a belief one way or the other is ofttimes an exacting task. For "reason to believe that" an imposition of conditions will or will not "reasonably assure" against flight or dangerousness [19] "involve[s] an attempt to predict future behavior on the basis of present information" [20] and requires a close weighing of the probabilities in light of the relevant circumstances.[21]

Not surprisingly, then, initial resolution of an application for release pending appeal is a function historically committed to trial judges.[22] It cannot be gainsaid that "the keynote to successful administration of any system of bail is the adequacy of the information upon which the decisions are based." [23] The need for ample information is particularly acute to investigations of potential danger to the community, findings relative to which, as has aptly been said, "must rest on a 'scrupulous inquiry' into appellant's past, his prospects if released, and conditions of release to mitigate the danger." [24] The trial court is not only the traditional but also the superior tribunal for the kind of information-gathering which a sound foundation for

16. See White v. United States, *supra* note 13, 134 U.S.App.D.C. at 15, 412 F.2d at 146.

17. Conditions that might reduce risks of flight and danger to acceptable levels must be considered and, if feasible, utilized. United States v. Bronson, *supra* note 14, 139 U.S.App.D.C. at 381, 433 F.2d at 539; United States v. Seegers, 139 U.S.App.D.C. 335, 337–338, 433 F.2d 493, 495–496 (1970); United States v. Kelley, 136 U.S.App.D.C. 239, 240, 420 F.2d 81, 82 (1969) (dissenting opinion); United States v. Jackson, *supra* note 14, 135 U.S.App.D.C. at 208, 209–210, 417 F.2d at 1155, 1156–1157; Banks v. United States, *supra* note 13, 134 U.S.App.D.C. at 256, 414 F.2d at 1152; United States v. Leathers, 134 U.S.App.D.C. 38, 40, 42, 412 F.2d 169, 171, 173 (1969); United States v. Harrison, *supra* note 14, 131 U.S.App.D.C. at 392, 405 F.2d at 356; Weaver v. United States, *supra* note 15, 131 U.S.App.D.C. at 389, 405 F.2d at 354; Russell v. United States, 131 U.S.App.D.C. 44, 45, 402 F.2d 185, 186 (1968); Wood v. United States, *supra* note 13, 129 U.S.App.D.C. at 145, 391 F.2d at 983; Stinnett v. United States, 128 U.S.App.D.C. 280, 282, 387 F.2d 238, 240 (1967); Allen v. United States, *supra* note 14, 128 U.S.App.D.C. at 211, 386 F.2d at 638 (dissenting opinion). As we explained in United States v. Jackson, *supra* note 14, "[t]hese risks . . . are to be measured only in terms of conduct that cannot be reasonably safeguarded against by an imposition of conditions upon the release." *Id.* at 208, 417 F.2d at 1155.

18. See note 12, *supra*. See also Chapman v. United States, 133 U.S.App.D.C. 73, 74, 408 F.2d 1276, 1277 (1969).

19. See note 12, *supra*.

20. United States v. Bronson, *supra* note 14, 139 U.S.App.D.C. at 381, 433 F.2d at 539.

21. White v. United States, *supra* note 13, 134 U.S.App.D.C. at 15, 412 F.2d at 146. "The law requires reasonable assurance but does not demand absolute certainty," United States v. Alston, 136 U.S.App.D.C. 334, 336, 420 F.2d 176, 178 (1970), and the judge's task is to ascertain whether that degree of sureness is attained. See also Ward v. United States, *supra* note 15, 76 S.Ct. at 1065–1066; United States v. Seegers, *supra* note 17, 139 U.S.App.D.C. at 336 & ns. 8–12, 433 F.2d at 494 & ns. 8–12; United States v. Jackson, *supra* note 14, 135 U.S.App.D.C. at 208 & n. 5, 417 F.2d at 1155 & n. 5.

22. See, *e. g.*, Dixon v. United States, 112 U.S.App.D.C. 366, 368, 303 F.2d 226, 228 (1965); United States v. Hansell, 109 F.2d 613, 614 (2d Cir. 1940).

23. Pannell v. United States, 115 U.S.App.D.C. 379, 383, 320 F.2d 698, 702 (1963) (dissenting opinion).

24. Hansford v. United States, *supra* note 13, 122 U.S.App.D.C. at 323, 353 F.2d at 861 (dissenting opinion), quoting Hairston v. United States, 120 U.S.App.D.C. 31, 35, 343 F.2d 313, 317, cert. denied, 382 U.S. 856, 86 S.Ct. 110, 15 L.Ed. 2d 94 (1965) (dissenting opinion) (footnote omitted).

a bail ruling almost inevitably requires. For it is there that, at a hearing, the judge can come face-to-face with the primary informational sources, and probe for what is obscure, trap what is elusive, and settle what is controversial. It is there, too, that the judge has at his disposal "the judicial machinery necessary to marshal the facts typically relevant to the release inquiry." [25] Indeed, "as a practical matter only the District Court can conduct the 'scrupulous inquiry' [26] and make the findings contemplated . . . ." [27]

Moreover, the trial judge's familiarity with the case ordinarily enables ready association of the relevant facts in appropriate relationships with the criteria governing release from custody. The judge's role in evolving trial evidence and his observation of the accused's trial demeanor often imparts to those facts a significance not discernible from the paper record upon which bail decisions in appellate courts must be achieved. [28] Findings on the risks of danger or flight, and on the efficacy of particular conditions of release to sufficiently minimize those risks, are obviously enriched by a feel of the case that comes only from participation in the live trial. The respect we customarily accord the district judge's determinations [29] attests the value of his appraisal of the intangibles which ultimately make or break the case for bail.

■ So, even prior to the Bail Reform Act, our settled practice called for submission of applications for release pending appeal to the District Court for decision in the first instance. [30] With the advent of the Federal Rules of Crim-

25. Baker v. Sard, 137 U.S.App.D.C. 139, 140, 420 F.2d 1342, 1343 (1969).

26. "[D]enial [of bail pending appeal on the ground of danger to the community] must be supported by a scrupulous inquiry into appellant's past history and all other relevant circumstances." Hairston v. United States, *supra* note 24, 120 U.S.App.D.C. at 35, 343 F.2d at 317 (dissenting opinion).

27. Hansford v. United States, *supra* note 13, 122 U.S.App.D.C. at 323, 353 F.2d at 861 (dissenting opinion).

28. See United States v. Seegers, *supra* note 17, 139 U.S.App.D.C. at 339, 433 F.2d at 497 (dissenting opinion); Banks v. United States, *supra* note 13, 134 U.S. App.D.C. at 258–259, 414 F.2d at 1154–1155 (dissenting opinion); Weaver v. United States, *supra* note 15, 131 U.S. App.D.C. at 389, 405 F.2d at 354. So, unlike our dissenting colleague, *post* pp. 589, 590, 591, we cannot attach great importance to the circumstance that the written record before us may be the same as that which was before the trial judge. In every case in which bail pending appeal is sought in this court, that is so or can be made so simply by the process of supplementation. If identity of record were the redeeming virtue in bail-pending-appeal cases, little or nothing would be served by the requirements that the trial judge make the initial decision, text *infra* at notes 30–35, and furnish a statement of his reasons for an adverse ruling, *infra* Part II. Compliance with these requirements is ordinarily the safeguard assuring that significant considerations not apparent from the paper record are gotten before us.

29. United States v. Long, 137 U.S.App. D.C. 275, 279, 422 F.2d 712, 716 (1970) ("deference"); United States v. Forrest, *supra* note 14, 135 U.S.App.D.C. at 351, 418 F.2d at 1187 ("entitled to weight"); United States v. Jackson, *supra* note 14, 135 U.S.App.D.C. at 209, 417 F.2d at 1156 ("deference"); Banks v. United States, *supra* note 13, 134 U.S.App.D.C. at 258, 414 F.2d at 1154 (dissenting opinion) ("great weight"); White v. United States, *supra* note 13, 134 U.S.App.D.C. at 16, 412 F.2d at 147 ("deference"); Chapman v. United States, *supra* note 18, 133 U.S.App.D.C. at 74, 408 F.2d at 1277 ("presumably correct"); United States v. Blyther, 132 U.S.App.D.C. 344, 407 F.2d 1279, cert. denied, 394 U.S. 953, 89 S.Ct. 1296, 22 L.Ed.2d 488 (1969) ("deference"); Weaver v. United States, *supra* note 15, 131 U.S.App.D.C. at 389 405 F.2d at 354 ("deference").

30. Jones v. United States, 123 U.S.App. D.C. 176, 177, 358 F.2d 543, 544, cert. denied, 385 U.S. 868, 87 S.Ct. 134, 17 L.Ed.2d 96 (1968) (opinion of Chief Judge Bazelon); Pelletier v. United States, 120 U.S.App.D.C. 40, 41, 343 F.2d 322, 323 (1965). See also, Hansford v. United States, *supra* note 13, 122 U.S.App.D.C. at 323, 324, 353 F.2d at

inal Procedure,[31] that practice became a uniform requirement in all federal judicial circuits. Rule 38(c) provided that motions in courts of appeals for release pending appeal must show that prior application to a district judge had been made and denied or was impracticable,[32] and nothing in the scheme of the Bail Reform Act signaled a change in that regard.[33] More recently, Rule 9(b) of the Federal Rules of Appellate Procedure has explicated that "[a]pplication for release after a judgment of conviction shall be made in the first instance in the district court", and that only "[t]hereafter" could "a motion for release, or for modification of the conditions of release, pending review . . . be made to the court of appeals or to a judge thereof."[34] Since jurisdiction of a court of appeals attaches immediately upon the filing of a notice of appeal,[35] this requirement did not spring from any lack of power on that court's part to deal with bail matters from the very beginning. It emanated instead from recognition that initial processing by the trial judge was apt to make a contribution to any consideration of bail that might later be required at another level.

## II

■ Appellate Rule 9(b) couples a second requirement to the one that release pending appeal be first sought in the trial court. It is that the trial judge state in writing his reasons in the event that release is either denied or conditioned.[36] Quite obviously, the values of initial consideration by a district judge are lost to the extent that the significance he assigned to the various and often conflicting factors—legal and factual—is left unknown. Without the settling effect of a reasoned treatment of the relevant information by the judge, we are apt to confront "a welter of assertion and counter-assertion [by the parties] . . . from which we have no adequate means of emerging."[37]

861, 862 (dissenting opinion); Hairston v. United States, *supra* note 24, 120 U.S. App.D.C. at 32, 343 F.2d at 314 (dissenting opinion).

31. The Criminal Rules became effective on March 21, 1946. See Fed.R.Crim.P. 59; Singleton v. Botkin, 5 F.R.D. 173 (D.D. C.1946); United States v. Claus, 5 F.R. D. 278, 280 (E.D.N.Y.1946).

32. "If application is made to a court of appeals or to a circuit judge or to a justice of the Supreme Court for bail pending appeal or for an extension of time for filing the record on appeal or for any other relief which might have been granted by the district, the application shall be upon notice and shall show that application to the court below or a judge thereof is not practicable or that application has been made and denied, with the reasons given for the denial, or that the action on the application did not afford the relief to which the applicant considers himself to be entitled." Fed.R.Crim. P. 38(c). This provision was abrogated Dec. 4, 1967, effective July 1, 1968, on which latter date the Federal Rules of Appellate Procedure went into operation.

33. See Advisory Committee Note to Fed. R.App.P. 9(b).

34. "Application for release after a judgment of conviction shall be made in the first instance in the district court. If the district court refuses release pending appeal, or imposes conditions of release, the court shall state in writing the reasons for the action taken. Thereafter, if an appeal is pending, a motion for release, or for modification of the conditions of release, pending review may be made to the court of appeals or to a judge thereof. . . ." Fed.R.App.P. 9(b)

35. See Wood v. United States, *supra* note 13, 129 U.S.App.D.C. at 145, 391 F.2d at 983; Pratti v. United States, 350 F.2d 290, 292 (9th Cir. 1965); Cain v. United States, 148 F.2d 182, 183 (9th Cir. 1945), cert. denied, 329 U.S. 760, 67 S.Ct. 115, 91 L.Ed. 655 (1946). See also Donovan v. Esso Shipping Co., 259 F.2d 65, 68 (3rd Cir. 1958), cert. denied, 359 U.S. 907, 79 S.Ct. 583, 3 L.Ed.2d 572 (1959); Hogg v. United States, 411 F.2d 578, 580 (6th Cir. 1969); Cord v. Smith, 370 F.2d 418, 421–422 (9th Cir. 1966).

36. See note 34, *supra*.

37. Hansford v. United States, *supra* note 13, 122 U.S.App.D.C. at 323, 353 F.2d at 861, quoting United States v. Hansell, *supra* note 22, 109 F.2d at 614 (footnote omitted).

Without elucidation of the bases for the judge's action, we cannot fairly evaluate the merits of either the application or the judge's decision thereon. As we have had occasion to point out, "[t]he District Judge's reasoning must be delineated both out of fairness to the appellant and as an aid to this court in its role in bail administration." [38] We read the twin specifications of Rule 9(b)— that applications for release pending appeal be first adjudicated in district courts and that district judges supply their reasons for dispositions other than unconditional release—as a mandate that circuit judges give those reasons respectful consideration in arriving at their own decisions on bail.

In Weaver v. United States,[39] we defined the trial judge's duty in these words:

The District Judge should indicate not only which one or more of [the statutory] reasons has prompted him to deny release, but should also delineate the basis for his utilization of such reason or reasons. If he deems the appeal frivolous, he should state the

considerations, legal and factual, which led him to that conclusion. If he views appellant's release as posing a risk of danger or flight, he should point to those factors in the record which foreshadow such a possibility. He should also inquire concerning available financial and nonfinancial conditions of release and offer reasons why they do not "assure that the person will not flee or pose a danger to any other person or to the community." [40]

We added that "[o]nly when these reasons are spelled out can an appellant intelligently renew his motion before this court; and only then can this court fairly review the merits." [41]

In the case at bar, we are not favored with a *Weaver*-type statement of the trial judge's reasons for denying appellant's release pending appeal. The judge's response to Rule 9(b) is little more than a recitation of certain of the procedural events during the prosecution and an expression of opinion that release conditions would not suitably safeguard against flight or dangerousness.[42]

38. Weaver v. United States, *supra* note 15, 131 U.S.App.D.C. at 389, 405 F.2d at 353 (footnote omitted). See also United States v. Jackson, *supra* note 14, 135 U.S. App.D.C. at 209, 417 F.2d at 1156.

39. *Supra* note 15.

40. 131 U.S.App.D.C. at 389, 405 F.2d at 353 (footnote omitted).

41. *Id.* See also United States v. Jackson, *supra* note 14, 135 U.S.App.D.C. at 209, 417 F.2d at 1156.

42. The judge's Rule 9(b) statement consisted of findings and conclusions as follows:

I. FINDINGS OF FACT

1. On May 21, 1971, defendant was found guilty by a jury of receipt and concealment of narcotic drugs knowing same to have been imported contrary to law, 21 U.S.C. § 174.

2. The evidence introduced at trial was more than sufficient to sustain defendant's conviction and the Court can recall no error in that proceeding.

3. During defendant's pre-sentence interview he admitted using narcotics during his employment as a Metro-

politan Police Department officer, and re-affirmed this fact at sentencing.

4. On August 2, 1971, defendant was sentenced to a term of imprisonment of five years, the *minimum* sentence permitted for a violaion of 21 U.S.C. § 174.

5. On that same date, this Court, *sua sponte*, determined that defendant should not be released pending appeal.

6. On October 27, 1971, defendant filed the within motion, arguing that this Court erred in referring to 23 D.C. Code § 1325 for the appropriate standards for judging release pending appeal.

II. CONCLUSIONS OF LAW

1. The appropriate standard for judging release pending appeal following a conviction under 21 U.S.C. § 174 is 18 U.S.C. §§ 3146 and 3148, as determined in United States v. Benjamin Thompson, [147 U.S.App.D.C. 1, 452 F.2d 1333] D.C.Cir. No. 71–1182 decided October 7, 1971; i. e., subsequent to denial of defendant's release on August 2, 1971.

2. By reason of the foregoing findings this Court is of the opinion that no one or more conditions of release as

Vague insinuations aside, no facts which might augur risks of that magnitude are identified, and no reasons why an imposition of conditions might not sufficiently minimize them is offered. The statement *Weaver* envisions must fairly explain the judge's ruling in order that it may be intelligently reviewed. The statement with which we are presented is wholly conclusory and in no way comports with *Weaver* standards.

### III

In this milieu, we confront a problem which we have had to face in the past: the course appropriately to be taken when a trial judge has failed to comply with Rule 9(b). Our decisions have traveled each of two possible routes, according to whether an opportunity for a solid decision by this court on bail was present. Where the relevant facts have been clear enough to lead convincingly to but one conclusion on release, we have resolved the question ourselves without a remand for a further statement of reasons.[43] We have followed the same course in situations where it appeared that the cause of elucidation would not be served by a remand.[44] But where we have felt unable to soundly resolve the bail issue on the information available to us and a further call upon the trial judge promised real assistance, we have remanded for suitable amplification of the Rule 9(b) statement.[45] That, we think, is the disposition incumbent upon us here.

The question at hand is not the standard by which we are to decide motions for release from custody during the pendency of an appeal. The question is whether we can justifiably proceed to any decision without soliciting

outlined in 18 U.S.C. § 3146 will reasonably assure that defendant will not flee or pose a danger to any other person or to the community.

We note that the judge's statement only obliquely opines that appellant's appeal is frivolous. See ¶ 2. Appellant claims error in instructing and failing to instruct the jury, in admitting evidence allegedly hearsay, and in refusing to grant appellant's motion for a judgment of acquittal. We express no opinion on the merits of these contentions save that we are satisfied that nonfrivolous issues are presented.

43. See United States v. Harrison, *supra* note 14, 131 U.S.App.D.C. at 392, 405 F.2d at 357, where "the showing [was] so clear that we are confident that our disposition at this juncture makes no difference in the final result." See also Russell v. United States, *supra* note 17, 131 U.S.App.D.C. at 45, 402 F.2d at 186, where the Government's uncontroverted representation as to the accused's criminal record led to our conclusion that the risk of danger precluded release pending appeal.

44. In Banks v. United States, *supra* note 13, 134 U.S.App.D.C. at 258, 414 F.2d at 1154, the trial judge had already confronted appellant's motion for release on three separate occasions. We felt "that his views [had] been thoroughly solicited" and that "[a]nother remand would serve

no useful purpose." And see United States v. Alston, *supra* note 21, 136 U.S. App.D.C. at 335, 336 n. 2, 420 F.2d at 177, 178 n. 2, where on a second appeal from a denial of pretrial release, we found inadequate compliance with our prior order remanding for reconsideration and explanation, we pointed out that "the District Court has already once had the opportunity to consider the factors [indicating a reasonable assurance against flight] . . . but has failed to do so" and it appeared that there was "little use" in requiring the accused's continued incarceration through a second remand. See also Jones v. United States, *supra* note 45.

45. United States v. Seegers, *supra* note 17, 139 U.S.App.D.C. at 337–338, 433 F.2d at 495–496; United States v. Jackson, *supra* note 14, 135 U.S.App.D.C. at 209–210, 417 F.2d at 1156–1157; Weaver v. United States, *supra* note 15, 131 U.S. App.D.C. at 389, 390, 405 F.2d at 353, 354. See also United States v. Leathers, *supra* note 17, 134 U.S.App.D.C. at 42, 412 F.2d at 173; United States v. Blyther, *supra* note 29, 132 U.S.App.D.C. at 345, 407 F.2d at 1280 (opinion of Judge Fahy); Byrd v. United States, *supra* note 15. That was our usual practice prior to the Bail Reform Act. See also Febre v. United States, 396 U.S. 1225, 90 S.Ct. 19, 24 L.Ed.2d 48 (1969) (Mr. Justice Harlan) and note 30, *supra*, and accompanying text.

from the trial judge conceivably helpful information we do not have. Our duty in the statutory scheme is to insure against indiscriminate administration of bail and, indubitably, "[t]he function of this court on a bail application pending appeal . . . is not merely appellate but includes the duty to make an independent determination of all relevant factors." [46] Once all pertinent information has been developed by the parties and subjected to the decision-making process by the trial judge, we are accorded leeway in assessing the merits of both the information and the judge's decision.[47] But this does not mean that we are free to ignore the reasons assigned by a trial judge for his action [48] or, except where the ruling properly to be made on release is very clear, to adjudicate the application when the judge has neglected a statement of reasons.[49] The requirement that the trial judge furnish such a statement, we have said, is a direction that we in turn

consider it, with all the deference it is due.[50] We can no more remain faithful to our responsibilities by venturing a decision when potentially valuable views of the trial judge remain unknown than when other material information remains ungathered.

We cannot proceed confidently to a resolution of the present appellant's bail motion without an expression of the trial judge's reasons for denying it. The information before us does not point inexorably to a single conclusion; rather, in critical respects, it lends itself to duplicitous interpretations. On the one hand is appellant's impressive showing, predicated largely on personal and family ties to the District,[51] the absence of any substantial prior criminal record;[52] a good performance on pretrial release,[53] and the offer of a home and a job pending appeal.[54] On the other hand, appellant has been found guilty of a heinous offense,[55] he admits to past

46. Hansford v. United States, *supra* note 13, 122 U.S.App.D.C. at 322, 353 F.2d at 860. See also Russell v. United States, *supra* note 17, 131 U.S.App.D.C. at 45, 402 F.2d at 186; Byrd v. United States, *supra* note 15, 130 U.S.App.D.C. at 278, 400 F.2d at 749. Compare Cohen v. United States, 82 S.Ct. 8, 9, 7 L.Ed.2d 13 (1961) (Mr. Justice Douglas); Fernandez v. United States, 81 S.Ct. 642, 645, 5 L.Ed.2d 683 (1961) (Mr. Justice Harlan); Bandy v. United States, *supra* note 13, 81 S.Ct. at 198, 5 L.Ed.2d 218 (Mr. Justice Douglas); Guterma v. United States, 80 S.Ct. 666, 4 L.Ed.2d 735 (1960) (Mr. Justice Harlan); United States v. Motlow, 10 F.2d 657, 663 (7 Cir. 1926) (Mr. Justice Butler).

47. See the treatments given in United States v. Forrest, *supra* note 14; Banks v. United States, *supra* note 13; Chapman v. United States, *supra* note 18; United States v. Harrison, *supra* note 14; Russell v. United States, *supra* note 17; Byrd v. United States, *supra* note 15; Vauss v. United States, *supra* note 15; Conners v. United States, 124 U.S.App.D.C. 312, 365 F.2d 503 (1966); Jones v. United States, *supra* note 30; McCoy v. United States, 123 U.S.App.D.C. 81, 357 F.2d 272 (1966); Hansford v. United States, *supra* note 13.

48. See note 29, *supra*, and accompanying text.

49. See text *supra* at notes 43–45.

50. See text *supra* following note 38.

51. Appellant has lived in the District all his life. His wife, his two young children, his parents and a number of collateral relatives reside here also. However, the solidity of his relationships with his wife and other family members is questioned.

52. His only prior conviction was for disorderly conduct in 1965, for which he drew a $10 fine.

53. Pending trial, appellant worked for his father-in-law and always appeared in court when required.

54. He can continue in the employ of his father-in-law and reside with his wife and children in the home of her parents.

55. See note 1, *supra*. The raid of the apartment in which appellant was found netted more than 17,000 milligrams of heroin 65% pure. The Government's evidence tended to place appellant a foot away from a dresser atop which were cut and uncut heroin, quinine and paraphernalia for packaging it. These circumstances indicated trafficking, and a

use of narcotics,[56] and he faces five years in prison without hope of probation or parole.[57] Contrary to the appraisal of our dissenting colleague, we do not rate the case for bail "overwhelming"[58] or a grant of release "inescapable."[59] We are completely in the dark as to the treatment the trial judge gave the circumstances we already know and, beyond that, more remarkable indicia of nonreleasability may reside in circumstances we do not know.[60] We cannot afford to discount either possibility; the judge revoked appellant's bail immediately upon return of the jury's verdict and, when asked to reconsider, stated emphatically that no conditions of release could provide a reasonable assurance against flight or danger to the community. On the information before us we could not be nearly so positive, but we realize that we lack the benefit of the judge's thinking as well as his observations of and impressions from the ten-day trial at which he presided.[61]

In this state of affairs, both principle and reason caution against an attempt to assess and safeguard against the risks of flight and community danger which may be incidental to appellant's enlargement. Our current predicament is comparable to that in which we found ourselves in United States v. Jackson,[62] where we were forced to remand a record similarly unrevealing:

We do not know whether the District Judge deemed appellant a potential fugitive or a potential menace to the community, or in either event precisely why. Nor do we know just what consideration he may have given to an imposition of conditions with a view to minimizing the risks of flight and danger. These, of course, are initially subjects for the District Judge's inquiry and decision, and we intimate no view as to them. On the contrary, our practice is to defer to the District Judge's determinations when deference is due, in preference to a de novo investigation and ruling on our own —either for or against release. With evidence here pointing both ways on the issues of flight and danger, we cannot intelligently perform our review responsibilities without an understanding of the District Judge's decisional basis.[63]

▆▆▆ We realize, of course, that remands necessitated by failures to observe the commands of Rule 9(b) may occasion some encroachment on the accused's right to a speedy resolution on bail.[64] That enroachment, however, need not be more than slight. A remand simply calls upon the trial judge for an articulation of reasons he already has. Prompt compliance with the remand order is expected, and indeed may be

---

prime issue at trial was whether appellant had been so engaged. There was evidence tending to show that appellant, then a police officer, had a key to the apartment. He admitted that he was friendly with his convicted codefendant and that he had visited the apartment before, although he denied knowledge of the presence of drugs there.

56. The precise extent of use and the degree of addiction, if any, are unknown to us.

57. See 26 U.S.C. § 7237(d) (1964).

58. *Post* p. 591.

59. *Post* p. 592.

60. The dissenter deems this possibility too remote to merit consideration (*post* pp. 590). The fact that the judge's state-

ment is not in the form of a reasoned explanation makes it evident that the basis for his ruling is fully incorporated. And we know of no way the judge's own observations and impressions can be conveyed to us except through his statement of reasons.

61. Among the dissent's misreadings of our opinion is its misconstruction of what our remand seeks. *Post* p. 590, text at note 9. We are at a loss as to how we could more plainly signify our primary interest in a reasoned explanation by the trial judge for his action.

62. *Supra* note 14.

63. 135 U.S.App.D.C. at 209–210, 417 F.2d at 1156–1157 (footnotes omitted).

64. See note 66, *infra*.

required.[65] The truth of the matter is that the judge can act responsively about as quickly as we can de novo. Thus we discern no substantial incompatibility between promptness and soundness in bail determinations.[66] To scrap a remand in this case is not only to uproot previous decisions of this court [67] but also to emasculate the wholesome policies undergirding the scheme of the Bail Reform Act and the implementing Rules.[68] We admonish counsel and trial judges alike to tap every available source of information potentially helpful to a solid decision on releasibility.[69] As judges likewise

65. Our remand orders frequently specify time limits within which the required response must be forthcoming. There is no reason why short limits cannot be set for fulfillment of remands requiring nothing more than a statement of reasons in bail cases. That we have frequently done in the past.

66. This is the point of departure for the majority and dissenting approaches in this case. Motions for release pending appeal are to be passed on "promptly." Fed.R.App.P. 9(b). Compare the similar provisions in the Bail Reform Act, 18 U.S.C. § 3147(b) (appeal from imposition of conditions on pretrial release). See also Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (pretrial release). That is not to say, as the dissent appears to argue, post pp. 589–590, that Rule 9 outlaws remands consequent upon omitted or inadequate statements of reasons. With a view to expedition, the Rule identifies the steps prerequisite in the trial court and streamlines the paperwork for appellate consideration, but it hardly sacrifices sound decision-making on the altar of speed. That is evident, if not from logic, from the admonition that "[e]qually important to the just and speedy disposition of [bail] appeals is the requirement that the district court state the reasons for its decision." Advisory Committee Note Rule 9(a). The dissent, moreover, mislabels our purpose, which is not a "foray [] for more evidence," post p. 589, but a quest for reasons; and distorts our position, which is not "that we will remand the record whenever a District Court judge has failed adequately to state reasons" post p. 590, but rather is that we are obliged to do so when we cannot act responsibly otherwise, see text supra at notes 43–45.

67. Seemingly, the position in dissent (post p. 590) is that this court, in lieu of remanding, should proceed to resolve applications for bail pending appeal in all instances where the judge has failed to supply an acceptable statement of reasons for his actions. We have declined that invitation, even on plainer records, in the past, e. g., United States v. Jackson, supra note 14, 135 U.S.App.D.C. at 209–210, 417 F.2d at 1156–1157, and we are not persuaded that we should accept it now. We do not agree that remands of this type are potentially fruitless, or that we are free to ignore the clear implications of Fed.R.App.P. 9(b).

68. The extremes to which the dissent is forced illustrate the point. It argues that the statement of reasons Rule 9(b) explicitly requires need not be brought to our attention; indeed, that we may "act without interposing the trial court". Post p. 589. We in the majority would not tolerate such practices. It also argues that since we cannot be certain that the trial judge was right in concluding that appellant is apt to flee or menace the community, we should exercise our discretion in favor of releasing him until we are sure. We think the Rule accepts the wisdom of our remand in the circumstances here.

69. See Febre v. United States, supra note 45; Bandy v. United States, supra note 13, 81 S.Ct. at 198, 5 L.Ed.2d 218; Ward v. United States, supra note 15, 76 S.Ct. at 1065, 1 L.Ed.2d 25; United States v. Seegers, supra note 17, 139 U.S.App.D.C. at 337–338, 433 F.2d at 495–496. See also United States v. Long, supra note 29, 137 U.S.App.D.C. at 276–277, 422 F.2d at 713–714; United States v. Jackson, supra note 14, 135 U.S.App.D.C. at 208, 209–210, 417 F.2d at 1155, 1156–1157; Banks v. United States, supra note 13, 134 U.S.App.D.C. at 257, 414 F.2d at 1153; United States v. Leathers, supra note 17, 134 U.S.App.D.C. at 41–42, 412 F.2d at 172–173; Chapman v. United States, supra note 18, 133 U.S.App.D.C. at 74, 75, 408 F.2d at 1277, 1278; United States v. Blyther, supra note 29; United States v. Harrison, supra note 14, 131 U.S.App.D.C. at 392, 405 F.2d at 357; Weaver v. United States, supra note 15; Byrd v. United States, supra note 15; McCoy v. United States, supra note 47, 123 U.S.App.D.C. at 82, 357 F.2d at 273; Hansford v. United States, supra note 13; Hairston v. United States, supra note 24, 120 U.S.App.D.C. at 32–33, 343 F.2d at 314–315; United

charged with administration of the bail system, we are not at liberty to do less.

BAZELON, Chief Judge, dissenting:

I agree with that large part of the Court's opinion which, sets out in descriptive fashion the wisdom of having the trial judge make the bail determination in the first instance, the necessity that the trial judge set out his reasons for denying bail pending appeal, and the deference due those reasons when adequately stated. I also share the view that the statement of reasons in this case is little more than a parroting of the statute and insufficient to satisfy the demands of Fed.R.App.P. 9(b) and our case law. My disagreement goes only to the issue of the proper disposition in this court. I believe that the letter and spirit of the governing rules require both that we reach the substantive issues in this motion now and that we order Stanley released, subject to conditions, pending determination of his appeal.

I

The majority justifies its remand of this record by invoking Fed.R.App.P. 9(b) in support of its assertion that "appraisal of the intangibles which ultimately make or break the case for bail"[1] can best be performed by the District Court. In my opinion the Court

misconceives the thrust of both the rule and our decisions construing it.

The overriding purpose of the procedural requirements of the rule is *expedition*—even at some expense to the "traditional" role of the trial court. The Advisory Committee's Notes make clear that the provision for trial court determination in the first instance was in no way intended to discourage appellate courts from acting: "[S]peedy determination [of the motion is necessary] if relief is to be effective."[2] To this end the rule provides that if the District Court refuses release or imposes conditions, it must state its reasons, and the appellant may then move the Court of Appeals to order his release or lift conditions. If read without reference to the narrow exception added by our case law, the rule then commands us to *determine* that motion, not hold it while we engage in forays for more evidence. Indeed, it goes on to specify that the evidentiary basis of our decision is to be "such papers, affidavits, and portions of the record as the parties shall present";[3] thus leaving to the parties the decision whether to put the trial court's opinion and underlying record into evidence. And not only does the rule contemplate that we will act without interposing the trial court, but it also explicitly empowers us to order the movant's release pending our determination of the motion.[4]

States v. Bennett, 444 F.2d 535 (9th Cir. 1971); United States v. Baca, 444 F.2d 1292, 1296–1297 (10th Cir. 1971).

1. Majority opinion at 582.

2. Federal Rules of Appellate Procedure, Advisory Committee's Note, Rule 9(b), reprinted at 43 F.R.D. 132 (1968). The *full quotation is more specific, asserting* that the procedure should be as speedy as the pretrial review the Committee describes in its Note to Rule 9(a) in these words:

> The purpose of [this] subdivision is to insure the expeditious determination of appeals respecting release orders, an expedition commanded by 18 U.S.C. § 3147 [of the Bail Reform Act] and by the Court in Stack v. Boyle, [342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951)].

3. Fed.R.App.P. 9(b).

4. *Id.* The Court's remand of the record in this case appears to call for an explicit determination whether to invoke our discretion under this provision.

Indeed, the very existence of this provision indicates that release is appropriate in at least some cases both prior to any determination of the motion and despite a District Court's contrary conclusion. Where, as here, the evidence sought by the Court would support denial of release, the Court shows itself unable to conclude that release subject to conditions is insufficient to guarantee the safety of the community and availability of the movant. This inability appears to require movant's release pending determination of the motion, even though the remand

The majority, however, today chooses to invoke the judicially created exception and ignore the urgency permeating the rule itself. This choice leads the Court to hold the motion, remand the record to the District Court, and let Stanley continue to suffer his second year of post-trial incarceration.[5] In this I think it goes too far. Our decision in Weaver v. United States [6] did, it is true, require that the District Court state its reasons for attaching conditions to release altogether. But the basis for that holding was a belief that requiring such a statement in all subsequent cases would facilitate an expeditious determination of subsequent motions addressed to this Court. *Weaver* should not be read, particularly in light of our later experience, as an announcement that we will remand the record *whenever* a District Court judge has failed adequately to state reasons. Every additional proceeding required in these cases imposes an additional denial of liberty on the moving appellant.[7] Consequently, to remand is to punish the movant solely because the trial court denied him his clear statutory right—a statement of reasons. The emasculation of the Bail Reform Act of 1966 that the Court fears, if not already a fact, will come through the application of logic like this rather than through any abandonment of the trial court. The *Weaver* remand, as an exception

necessary to correct trial court errors, cannot be made the general rule.

## II

The Court acknowledges that "remands necessitated by [trial court] failures to observe the commands of Rule 9(b) may occasion some encroachment on the accused's right to a speedy resolution on bail." [8] It justifies giving short shrift to the rule's contrary command by observing, first, that the trial judge has viewed the demeanor of the movant at trial, and, second, that there may be some "remarkable indicia of nonreleasibility . . . in circumstances we do not know." [9] Again, I think that Rule 9(b) itself strikes the balance between the advantages of testimonial inferences and the necessity of a speedy determination, and strikes it wisely at least as regards the two classes of inference hypothesized by the Court here.

The value of predictions of future conduct based on observations of a defendant's behavior during the extraordinary stress of trial has itself been severely questioned by insightful trial judges.[10] Here even less is possible, for a remand will not produce the unrecorded observations of a prescient witness, but only the faded recollections of a busy judge. I cannot countenance, nor believe that the rule permits, the sacri-

---

may produce evidence supporting denial of release pending determination of the appeal. *Cf.* 18 U.S.C. §§ 3146–48 (1970), requiring release *unless* the requisite determination has been made.

5. The trial judge ordered Stanley held commencing May 21, 1971, the day on which he was convicted.

6. 131 U.S.App.D.C. 388, 405 F.2d 353 (1968).

7. In Banks v. United States, 134 U.S. App.D.C. 254, 414 F.2d 1150 (1969), for example, five full months elapsed from entry of our *per curiam* order remanding the record until we finally determined the motion.

8. Majority opinion at 587.

9. *Id.* at 587.

10. The use of demeanor in a decision such as release pending trial or appeal, or the determination of a proper sentence, is troublesome even when the delay required to obtain it is ignored. According to an eminent trial judge:

> The trial judge's observation of the defendant . . . is often a minor and fleeting factor. It is, in the folklore of our judicial system, overdrawn and overweighed.

Frankel, Lawlessness in Sentencing, 41 U. Cin.L.Rev. 1, 27 (1972). *See* Statement of Judge Stanley A. Weigel, Appellate Review of Sentences, Hearings on S. 2722 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th Cong., 2d Sess. 75–76 (1966).

fice of what may be months of freedom to the pursuit of such chimera.

I similarly reject the Court's speculation that the trial judge may have been possessed of some "remarkable indicia of nonreleasibility" that were not only outside the record, but that the trial judge thought unnecessary even to mention in his statement of reasons. I cannot take account of such a remote and improper possibility.[11]

### III

Since I conclude that we have no justification for returning the record to the District Court, I turn to the merits of this motion. The Bail Reform Act of 1966 requires that a convicted offender be released pending appeal unless the court finds that the appeal is frivolous or taken for delay, or unless no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community.[12] Since no one asserts that Stanley's appeal is frivolous, our concern is with the likelihood of flight and danger to the community.

Movant's showing on the question of flight is, as the majority concedes, "impressive." Stanley has close ties to the community. His wife and children, parents, three brothers, six sisters, seven aunts and uncles, and wife's parents reside in the area. The pre-sentence report includes Stanley's wife's characterization of their marriage as "solid,"[13] and Stanley has been assured work in his father-in-law's business if released. Moreover, while at liberty prior to and during trial, Stanley has always ap-

peared when required to do so. The sole factor which points to the possibility of flight is that he is facing a five-year sentence. While relevant, it does not outweigh the overwhelming factors supporting release on strict conditions, and it is doubtful it would outweigh release on lesser ones.

Nor can the record support a finding that Stanley will pose a danger to the community if released. Only two facts in the record give any indication of dangerousness—Stanley's current conviction and his admission that he used narcotics while he was employed as a police officer.

Certainly the act for which a person seeking release stands convicted is relevant in assessing whether the community's safety would be imperiled by release. Here, however, the substantial issues Stanley raises on appeal directly concern whether or not he committed the offense for which he was convicted. In such cases, unlike appeals where the fact of the offense is unchallenged, the inference to be drawn from the guilty verdict is more questionable.[14] And, in Stanley's case, the inference is further attenuated by the almost total absence of prior criminal activity. His only other involvement with the law was a disorderly conduct charge in 1965 which resulted in a ten dollar fine.

The remaining factor concerns Stanley's admission of past drug usage, but not addiction. Stanley claims that he stopped using drugs in December, 1970, and it is uncontested that he is not addicted at this time. Further, it appears from the pre-sentence report that Stan-

---

11. In the rare case in which the trial judge did have such remarkable information, it could be put upon the record before this Court on the Government's motion to revoke bail.

12. 18 U.S.C. § 3148 (1970). This provision governs precisely because this request is a de novo motion rather than an appeal. Thus the proviso in § 3148 does not apply.

13. The only countervailing suggestion is an assertion contained in the Govern-

ment's opposition to the motion for release, that a cousin reported that Stanley was having marital difficulties and had argued with other members of his family. This assertion has no support in the record and, indeed, is in direct contradiction to Stanley's wife's appraisal.

14. Cf. Banks v. United States, supra note 7, 134 U.S.App.D.C. at 259, 414 F.2d at 1155 (1969) (Leventhal, J., dissenting).

ley sought help in stopping his drug usage when arrested for the present crime. Finally, Stanley has been promised work in his father-in-law's business if released and his father-in-law would be in a position to see that Stanley conducts himself properly during the working day.

In sum, Stanley would have a supervised job; he has no prior convictions or even arrests, save a ten dollar fine of some vintage, and he is apparently not addicted to drugs. On the identical record that was before the trial court, I think the conclusion inescapable that Stanley can be released without an unreasonable risk of flight or danger to the community under the conditions or release of the sort set forth in the form order appended to this opinion. I believe we are obligated to do so, and therefore dissent from the remand of this record.

## ORDER

Ordered by the court that Thomas E. Stanley, Jr., shall be released on his personal recognizance on the following conditions: (1) Upon the representation of counsel that Stanley has obtained regular employment within the Washington Metropolitan Area, he shall be released. (2) His employer shall report immediately to ——————— upon Stanley's failure to present himself for work at the proper time, and ——————— shall report that failure to counsel for the United States, counsel for Stanley, and the Criminal Clerk's Office of the United States District Court for the District of Columbia. (3) Stanley shall reside with his wife and children and not leave the Washington Metropolitan area without permission of the District Court. Stanley's wife is to report immediately to ——————— upon Stanley's overnight absence from their residence. (4) Stanley shall report to the D. C. Bail Agency weekly on ——————— in person. (5) Stanley shall not use any narcotic drug and shall report weekly (or as otherwise may be reasonably required) to the D. C. Bail Agency for testing to determine whether he has used any narcotic drug. (6) Stanley, his wife, and his employer shall sign a statement indicating their understanding of the conditions set forth above and promising compliance with them.