**UNITED STATES of America**

v.

**Damon ALSTON, Jr., Appellant.**

**No. 23102.**

United States Court of Appeals
District of Columbia Circuit.

Decided Aug. 20, 1969.

---

**PER CURIAM:**

This is the second time that this case is before us. On December 16, 1967, appellant was accused of armed robbery and jailed to await trial. Bail was set at $5000, and appellant, an indigent, has been unable to produce the $280 necessary for a $5000 bond. He asked the District Court to reduce the bond and establish nonfinancial conditions of bail to assure his presence when required. The District Court refused, and the accused appealed to this court. We remanded the case to the District Court for further consideration in light of our recent decision in United States v. Leathers, 134 U.S.App.D.C. 38, 412 F.2d 169 (April 17, 1969). In our order we directed the District Judge to do three things:

1. To reconsider his ruling in light of offers of Bonabond and appellant's former employer for employment upon release, in light of appellant's opportunity to reside at the Shaw Residence House, and in light of the appellant's opportunity to enroll with the Alcoholic Rehabilitation Clinic.

2. To explain why nonfinancial conditions would be inadequate, if the District Judge should conclude that they were.

3. To report on appellant's inability to meet the $5000 bond, if the District Judge should conclude that financial conditions were necessary, and to explain why financial conditions would be superior to nonfinancial conditions.

The District Court's failure to comply adequately with our directive [1]

Mr. Wilfred Milofsky, Washington, D. C., was on the motion for appellant.

Mr. Thomas A. Flannery, U. S. Atty., was on the opposition to the motion.

Before BAZELON, Chief Judge, and LEVENTHAL, Circuit Judge, in Chambers.

1. The District Court's Memorandum is set out in full below:

This memorandum is written pursuant to the remand order of the United States Court of Appeals, filed in this Court on June 19, 1969, and is supplementary to this Court's memorandum of May 14, 1969. The facts are again recited as follows:

The defendant is charged with armed robbery, robbery, assault with a dangerous weapon, and carrying a dangerous weapon, and he is being held on bail of $5,000.

The United States Attorney has informed the Court that the defendant and co-defendant approached the driver of a beer distributing truck as he stopped at an intersection, and defendant Alston called out that he wished a ride, meanwhile opening the truck door. He then demanded the driver's money while the co-defendant pointed a gun at the driver. The driver handed the money to defendant Alston, who, in turn, handed it to the co-defendant and then Alston proceeded to reach in the driver's pocket and took his wallet, after which he said to the gun-

moves us, reluctantly to reverse and to establish our own conditions for release.[2]

# I

██ The Bail Reform Act of 1966 [3] provides for pretrial release, even of persons who are not model citizens, if there is reasonable assurance that the accused will appear when required.[4] The law requires reasonable assurance but does not demand absolute certainty, which would be only a disguised way of compelling commitment in advance of judgment. To set $5000 bail for this appellant, who is indigent, is also merely another way of compelling pretrial commitment. We think the mandate of the law requires his release, because of the several factors which indicate that there is reasonable assurance that appellant will appear for trial if he is released subject to non-financial conditions of supervision.

Appellant is a resident of the District of Columbia and has been for 28 years, since he was a child. He has been assured of entry into the Shaw Residence if released. Bonabond would obtain employment for him and sponsor him, and his old employer has offered to take him back—with a raise. The director of the Alcoholic Rehabilitation Clinic at 14th

---

man, "Shoot him". The co-defendant remonstrated and the two turned to leave the scene. They had been observed from a distance of less than 50' by two police officers, who immediately arrested them and all the money was recovered.

The defendant was on parole at the time he was arrested, and if convicted, the parole is likely to be revoked. He could be sentenced for life on this case.

This Court considered in the first instance, and has now reconsidered, the offer of Bonabond to supervise the defendant, of his former employer to rehire him, of the Shaw Residence House to house him, and of the Alcoholic Rehabilitation Clinic to receive him for rehabilitative treatment. None of these agencies can assure the Court that the defendant would not flee once he is released from incarceration. When released, he would have freedom to travel to and from the places of his residence and employment. There would be no constant supervision of him, and once he is permitted to mingle among the populace, he is also able to roam about somewhat at will. Other than his promise, the restraint placed on him is minimal in the proposed offers, and his past conduct does not reveal a person whose character is that of a man bound by a promise.

Counsel for the defendant states that the defendant is unable to meet the $5,000 bail set, so that he cannot afford a monetary bond.

The order of remand requires that this Court advise the appellate court why a "money bond, if available, would be more effective in minimizing the risk of flight than the non-financial conditions of release proposed".

This defendant has pursued a criminal career since 1957 and has been con-victed seven times. Considering such a course of conduct and also considering the brazen act perpetrated in the instant case, it is this Court's opinion that no reliance could be put on his promise to adhere to the non-financial conditions of release. If anything could detain him, it would be the forfeiture of bond money, for this Court knows of no other way, except incarceration, which would be a restraint on him.

This Court's order of May 14, 1969, will stand.

2. Because of the length of time that appellant has already spent in jail, and because the District Court has already once had the opportunity to consider the factors which we discuss in this opinion but has failed to do so (no report was provided, for example, on the appellant's inability to meet the $5,000 bond, other than the memorandum's bare statement that counsel reported appellant's inability to pay), we think that it would be unfair and of little use to require appellant to remain jailed through a second remand.

3. 18 U.S.C. §§ 3146–3152 (Supp. IV, 1965–1968).

4. 18 U.S.C. § 3146(a) provides in part:
Any person charged with an offense, other than an offense punishable by death, *shall*, at his appearance before a judicial officer, be ordered released pending trial * * * *unless the [judicial] officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required.* [Emphasis added.]

and Q, where the accused was enrolled when his arrest took place, has stated that the accused may re-enroll upon his release. The D.C. Parole Board will not revoke the accused's parole from an earlier offense if he is released on bail and required to stay at the Shaw Residence. The Offender Rehabilitation project has worked out a plan of release, and the Bail Agency has recommended release to a suitable custodian.

■ The District Court, in its memorandum, dealt only briefly with the items mentioned above, and instead concentrated on other factors, such as the accused's prior convictions. These convictions are relevant under the Bail Reform Act of 1966, 18 U.S.C. §§ 3146–3152 (Supp. IV, 1965–1968), to the extent that they bear on the likelihood of his appearance in court when required. It is not the purpose of the bail system either to punish an accused again for his past crimes, or to punish him in advance for crimes he has not yet been shown to have committed. Past crimes would be material if proceedings incident thereto showed an accused had violated conditions of a bail or release order. The prosecutor makes no such claim here.

A District Court cannot fairly take past convictions into account, as showing tendency to flight, unless he at least makes inquiry whether in the prior proceedings the accused had failed to comply with bail, release, or other orders. The statute requires that the court take into account the accused's "record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings." See Wood v. United States, 129 U.S.App.D.C. 143, 391 F.2d 981, 984 (1968): "We do not think that under the Bail Reform Act a determination that money bail is required is appropriate unless the court at least ascertains the conduct of defendant when previously released on conditions, and whether the defendant previously abided by conditions imposed on him in prior proceedings. Consistent appearance when flight is possible is an important indicator of whether a defendant is likely to appear once again. * * * While appellant's record is by no means felicitous, it may be that he poses little risk of flight."

■ We are disturbed by the reference of the District Judge to the possibility of a life sentence under 22 D.C. Code 3202 (Supp. II, 1967–1969). The length of the sentence to which the accused is subject is relevant in determining the conditions of bail; the prospect of a long imprisonment certainly reduces the probability that a suspect will remain in the jurisdiction. But this must be taken into account as part of a balanced judgment, and that judgment is diluted when a judge refers to the possibility of a life sentence for armed robbery. In modern times, at least, a life sentence for robbery, even armed robbery, occurs so rarely as to be fairly described as a transparent rather than substantial consideration.

The District Court also referred to the "brazen act perpetrated in the instant case." This was a determination on an issue that was not noticed for hearing, a finding based solely on the claimed testimony of prosecution witnesses. No one may be confined on the ground that he has committed an offense when the determination is void of the protections that are the essentials of Anglo-American jurisprudence.

It is true, of course, that 18 U.S.C. § 3146(b) requires the court to take into account "the nature and circumstances of the offense charged [and] the weight of the evidence against the accused," but the statute neither requires nor permits a pretrial determination that the defendant is guilty. It is important to observe rather than obliterate the fundamental precepts of our jurisprudence. This is not merely a matter of the proprieties, though that is itself not unimportant for judicial actions. If one bears in mind that one is examining only the evidence against the accused, for purposes of considering prospect of flight, one is more likely to guard against the impermissible course of

reaching some kind of partial determination of guilt and of beginning what is in substance a mandate of punishment.

## II

The real dispute in this case is not over whether or not the accused should be admitted to bail; it is what the terms and conditions of bail should be. The District Court, in its more recent memorandum, stated that "[i]f anything could detain him [the accused], it would be the forfeiture of bond money." The District Court did not otherwise respond to our request to be advised of its basis for concluding that money bail would better insure appearance for trial than nonfinancial conditions. This bare assertion runs the risk of holding a pauper without any bail because he lacks the funds to make money bail. We conclude that the mandate and intent of Congress require use of the wide variety of techniques available to provide reasonable assurance that the accused will present himself when required. Our form of order attached sets forth a program which combines financial and nonfinancial conditions in a manner that we think fulfills the fundamental policies of the statutory system for bail. We remand to the District Court to enter a specific order, not inconsistent with this opinion, filling in blanks, and inserting additional conditions as it may be advised.

## ORDER

Ordered by the court that appellant shall be released on his personal recognizance on the following conditions:

1. Upon the representation of counsel that appellant Alston has obtained regular employment within the Washington Metropolitan Area, he shall be released.

2. Appellant's employer shall report immediately to _____ upon appellant's failure to present himself for work at the proper time, and _____ shall report that failure to counsel for the United States, counsel for appellant, and the Criminal Clerk's Office of the United States District Court for the District of Columbia.

3. Appellant shall re-enroll in the Alcoholic Rehabilitation Clinic, at 14th and Q Streets, N.W., and participate in a satisfactory manner in the prescribed program.

4. Appellant shall reside at the Shaw Residence, 1770 Park Road, N.W.

5. An appropriate official of the Shaw Residence is to report immediately to _____ upon appellant's failure to return to the residence by curfew time, or upon appellant's failure to abide satisfactorily by the rules and regulations of the Shaw Residence. The District Court shall, upon advice of counsel, determine the appropriate Shaw Residence official.

6. Appellant shall not leave the Washington Metropolitan Area, and shall not leave the District of Columbia except as his employment may necessitate, without the permission of the District Court.

7. Every pay period, appellant shall deposit 10% of his net earnings, unless and until this sum reaches $500, with the Clerk of the District Court as security for his appearance, to be returned in full when appellant appears for trial, or to be forfeited in whole or in part, as directed by the District Court, should he fail to appear. Permissible variation: The sums shall be deposited with counsel, instead of the Clerk, who shall hold them subject to order of the District Court, but if the sum reaches $500, counsel shall transfer forthwith to the Clerk. If appellant should violate the terms of his release before such deposit is made, that portion which has already been deposited with his attorney shall be forfeited. Appellant shall remain subject to all criminal penalties, including fines, for failure to fulfill the conditions of his release.

8. Appellant shall sign a statement indicating his understanding of the conditions set forth above and promising his compliance with them.