UNITED STATES of America,
Plaintiff-Appellee,

v.

Amir Masoud MOTAMEDI,
Defendant-Appellant.

No. 84–5350.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1985.

Decided Aug. 8, 1985.

Boochever, Circuit Judge, filed opinion
concurring in part and dissenting in part.

**1404**

Jeffrey Modisett, William Fahey, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Alan J. Weil, Los Angeles, Cal., for defendant-appellant.

Before SNEED, KENNEDY and BOO-CHEVER, Circuit Judges.

KENNEDY, Circuit Judge:

The Government moves for reconsideration of our reversal of the district court's pretrial detention order. Because the Government has failed to establish by a preponderance of the evidence that Motamedi poses a flight risk, the motion for reconsideration must be denied.

Motamedi was arrested on charges of conspiracy to export items without a license, in violation of the Arms Export Control Act, 22 U.S.C. § 2778 (1982). The United States Magistrate conditioned his pretrial release upon the posting of a $400,000 secured appearance bond, with special conditions including intensive Pretrial Services supervision, travel restrictions, and surrender of both passport and greencard. Motamedi complied with these conditions and was released.

A month and a half elapsed, and Motamedi was indicted on one count of conspiracy under 18 U.S.C. § 371, and fourteen counts of unlicensed exportation of items attended by false shipper's declara-

tions, under 22 U.S.C. § 2778(c) (1982), 18 U.S.C. § 2(b) (1982). The maximum sentence on the conspiracy count is five years, and the maximum sentence on each of the exportation counts is two years.

Motamedi voluntarily appeared for arraignment at which time the Government requested a detention order on the ground that Motamedi posed a serious risk of flight. Based on the information presented, the magistrate found that Motamedi, an Iranian citizen, was acting as a *de facto* purchasing agent for the current Iranian government and could return to Iran with impunity; that he maintained large foreign bank accounts with most, if not all, of the deposits being made by the Iranian government; that he persisted in his allegedly illegal exporting activities despite warnings by agents of the United States Customs and Federal Bureau of Investigation that it was illegal to export the items in question; and that the nature and circumstances of the offenses charged are serious. Based on her findings, the magistrate concluded that the Government had demonstrated by a preponderance of the evidence that no condition or combination of conditions would reasonably assure the appearance of Motamedi for further proceedings in the case, and ordered him detained.

Faced with detention, Motamedi moved the district court, pursuant to section 3145(b) of the Bail Reform Act of 1984, 18 U.S.C. § 3145(b) (1984),[1] to revoke the detention order and to set bail. A second hearing was held at which the parties presented the same information that was before the magistrate. The court concluded that the magistrate's factual findings were not clearly erroneous and that it would reach the conclusion that no condition or combination of conditions would reasonably assure Motamedi's appearance, regardless of whether the applicable burden of proof was preponderance of the evidence or clear and convincing evidence. The dis-

---

[1] The Bail Reform Act of 1984 may be found at Act of Oct. 12, 1984, Pub.L. No. 98–473, 1984 · U.S.Code Cong. & Ad.News (98 Stat.1976).

trict court affirmed the detention order and this appeal followed.

We reversed and ordered release on the same financial terms and conditions as had been granted prior to revocation of bail. The Government moved for reconsideration and clarification of our release order. Without passing on the arguments presented in the Government's motion, we authorized the district court to increase the monetary amount of the bond, with the condition that it be an amount that Motamedi could post. The bond is set at $750,000. Because the parties raise issues of first impression under the Bail Reform Act of 1984, concerning the applicable burden of proof to be met in the district court and the proper standard of review in this court, we heard oral argument and now issue this opinion in support of our order.

■■■ In determining the applicable standard of review, we bear in mind that federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail. *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951); *United States v. Honeyman,* 470 F.2d 473, 474 (9th Cir.1972). Only in rare circumstances should release be denied. *Sellers v. United States,* 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968) (Black, J., in chambers); *United States v. Schiavo,* 587 F.2d 532, 533 (1st Cir.1978); *United States v. Abrahams,* 575 F.2d 3, 8 (1st Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978). Doubts regarding the propriety of release should be resolved in favor of the defendant. *Herzog v. United States,* 75 S.Ct. 349, 351, 99 L.Ed. 1299 (1955) (Douglas, J., in chambers); *United States v. McGill,* 604 F.2d 1252, 1255 (9th Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980).

■■■ Release pending trial is governed by the Bail Reform Act of 1984 which, like its predecessor, the Bail Reform Act of 1966, 18 U.S.C. §§ 3146–3152 (1982) (repealed October 12, 1984), mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required. 18 U.S.C. § 3142(c)(2) (1984); *see Honeyman,* 470 F.2d at 474–75; *Banks v. United States,* 414 F.2d 1150, 1153 (D.C.Cir.1969). The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected.

We review the district court's factual findings under a deferential, clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). In a release determination, however, the conclusion based on those factual findings presents a mixed question of fact and law. The inquiry transcends the facts presented and requires both the consideration of legal principles and the exercise of sound judgment about the values which underly those principles. *McConney,* 728 F.2d at 1202. In reviewing a district court's order denying pretrial release, we must ensure not only that the factual findings support the conclusion reached, but also that the person's constitutional and statutory rights have been respected. *See Truong Dinh Hung v. United States,* 439 U.S. 1326, 1328–29, 99 S.Ct. 16, 17–18, 58 L.Ed.2d 33 (1978) (Brennan, J., in chambers); *Stack v. Boyle,* 342 U.S. at 4, 72 S.Ct. at 3. Accordingly, we may make an independent examination of the facts, the findings, and the record to determine whether the pretrial detention order is consistent with those constitutional and statutory rights. *McConney,* 728 F.2d at 1202.

This conclusion is supported by the standard of review applied by Supreme Court Justices when reviewing detention orders. *See* Sup.Ct.R. 35, 50. In light of the important constitutional dimensions involved, the Justices have consistently recognized "a nondelegable responsibility to make an independent determination of the merits of the application." *See Truong Dinh Hung,* 439 U.S. at 1328, 99 S.Ct. at 17; *Mecom v. United States,* 434 U.S. 1340, 1341, 98 S.Ct.

19, 20, 54 L.Ed.2d 49 (1977) (Powell, J., in chambers); *Harris v. United States,* 404 U.S. 1232 at 1232, 92 S.Ct. 10 at 12, 30 L.Ed.2d 25 (1971) (Douglas, J., in chambers); *Sellers,* 89 S.Ct. at 37–38; *Reynolds v. United States,* 80 S.Ct. 30, 32, 4 L.Ed.2d 46 (1959) (Douglas, J., in chambers). It would be incongruous for us to apply a more narrow standard of review than that applied by the Circuit Justice. *See United States v. Provenzano,* 605 F.2d 85, 92 (3d Cir.1979).

■ We hold that the applicable standard of review for pretrial detention orders is one of deference to the district court's factual findings, absent a showing that they are clearly erroneous, coupled with our right of independent examination of the facts, the findings, and the record to determine whether an order of pretrial detention may be upheld.

■ We must further determine the Government's burden of proof in establishing risk of flight under the 1984 Act. If the Government may establish such risk by a mere preponderance of the evidence, it is entitled to know that we rule against it in what has become a close case. In the trial court and in this court, the Government must establish risk of flight by a clear preponderance of the evidence, not by the higher standard of clear and convincing evidence. We reach this conclusion from the language and structure of the present statute, considered in light of the rules which pertained at the time of the enactment.

The Bail Reform Act of 1966 authorized pretrial detention without bail only in those cases where conditions could not reasonably assure the defendant's presence at trial. *See* 18 U.S.C. § 3146(a) (1982) (repealed 1984). In contrast, the 1984 Act permits the pretrial detention of a defendant without bail where it is demonstrated either that there is a risk of flight or no assurance that release is consistent with the safety of another person or the community. Danger to another or to the community is a statutory addition that constitutes a significant departure from the previous law. S.Rep. No. 98–147, 98th Cong., 1st Sess. 1–2 (1983).

Under the 1984 Act, a finding that a person presents a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f) (1984). The statute, however, is silent with regard to the burden of proof governing the finding that a person poses a risk of flight. The language and structure of the 1984 Act lead us to conclude that the flight risk determination is governed by a standard other than that of clear and convincing evidence.

In the related context of a defendant's right to bail pending appeal, Congress expressly required the defendant to negate both danger to the community and flight risk by clear and convincing evidence. 18 U.S.C. § 3143(a) (1984). Had Congress desired to achieve a similar result regarding the right to bail pending trial, it would have so provided.

■ We must presume that Congress acts with deliberation, rather than by inadvertence, when it drafts a statute. The statute's silence regarding the burden of proof for flight risk determinations should be considered in light of its explicit edict that the heavy burden of clear and convincing evidence applies to a finding of danger to an individual or to the community. The most plausible interpretation for this statutory pattern is that Congress intended the two inquiries to be governed by different standards.

This determination does not, however, conclude the analysis, for we must now ascertain the standard of proof properly applicable to findings of flight risk under the 1984 Act. Presumably, the congressional silence on this point evinces a legislative intent to incorporate the standard applicable to this determination under the 1966 Act. Although the old Act did not include an express statement regarding the standard which governed findings of flight risk, its language strongly suggested the applicability of the preponderance standard. In determining the conditions of re-

lease, judges were provided with a list of factors to consider in reaching their conclusions. 18 U.S.C. § 3146(b) (1982) (repealed 1984). Such a balancing approach normally implies utilization of the preponderance standard. Further, in reviewing appeals from orders imposing conditions on release, courts were instructed to affirm so long as the order was "supported by the proceedings below." 18 U.S.C. § 3147(b) (1982) (repealed 1984). The Supreme Court has found, under this provision, a duty to affirm so long as there was evidence which would have justified the lower courts "in reasonably believing that there is a risk of applicant's flight." *Truong Dinh Hung*, 439 U.S. at 1328–29, 99 S.Ct. at 17–18. This interpretation of the statute further indicates the applicability of the preponderance standard. Finally, because the standard of proof usually applicable to pretrial proceedings is the preponderance of the evidence, *see United States v. Orta*, 760 F.2d 887, 891 n. 20 (8th Cir.1985) (en banc), we conclude that the congressional silence with regard to the applicable standard of proof in demonstrating risk of flight is the preponderance of the evidence. *Orta*, at 891 n. 20.

Such differential treatment comports with the congressional recognition of danger to another or to the community as a discrete, independent basis for the denial of pretrial release. Since bail was determined under the former law by the likelihood of defendant's appearance at trial, and without explicit recognition of the need to protect the community, it is reasonable to subject the Government to a higher standard of proof when the second purpose is added as an explicit statutory category. Further, a finding of danger to the community is likely to involve more specific and quantifiable evidence than is a finding of risk of flight. For instance, prior convictions, police reports, and other investigatory documents are, as a matter of course, used to show past histories of violence. From these objective sources, trial judges may infer a present danger to the community. Such data is not often available regarding the risk of flight. Thus, it is wholly feasi-

ble for the Government to satisfy the higher burden in showing danger to the community.

■ In concluding that the Government's burden in denying bail on the basis of flight risk is that of the preponderance of the evidence, we are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons. *See Truong Dinh Hung*, 439 U.S. at 1329, 99 S.Ct. at 18; *Harris*, 404 U.S. at 1232, 92 S.Ct. at 12; *Sellers*, 89 S.Ct. at 38. This rule, however, pertains to the nature of the permissible factors to be utilized in denying an application for bail, not to the quantum of proof required to establish the presence of such factors.

■ Having determined both the applicable standard of review and the proper burden of proof, we must consider whether the Government has demonstrated by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Motamedi's appearance. Section 3142(g) specifies the various factors to be considered by the court in determining whether conditions of release may be imposed that will reasonably assure the appearance of the person. The court must take into account available information concerning the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g) (1984).

There are many factors listed in section 3142(g) which point toward the conclusion that Motamedi should be released. Motamedi is a 27-year old Iranian citizen who

has been admitted for permanent residence in this country. He has been living in the Los Angeles area since 1976 and has applied for citizenship. He has approximately eighty-five relatives in the Los Angeles area, many of whom are citizens. His immediate family, including his wife, brothers, mother, and father, all reside in the area. His parents have posted their residence as security on the $750,000 bond. He has no prior criminal record, and no history of alcohol or drug abuse. He has not violated any conditions of his release, and has made all court appearances.

In denying Motamedi's motion for revocation of the detention order, the district court relied on the magistrate's findings that the charges against Motamedi are serious; that he exported military items after being warned that it was illegal to do so, and after telling the United States Attorney that he had ceased doing so; that he is an Iranian citizen who may return to Iran with impunity; and that he maintains large bank accounts in foreign countries. These findings appear to be drawn primarily from allegations contained in the indictment. The district court stated that it found most persuasive the fact that Motamedi is an Iranian citizen allegedly acting as an agent of the Iranian government who could return to Iran with impunity.

With all due respect for the district court's determinations, our independent review leads us to a contrary conclusion. It is apparent from the record below that the district court accorded great weight to the charges against Motamedi and the Government's assertions of his guilt. Our court has stated, however, that the weight of the evidence is the least important of the various factors. *Honeyman,* 470 F.2d at 474. Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty. *See United States v. Edson,* 487 F.2d 370, 372 (1st Cir.1973); *United States v. Alston,* 420 F.2d 176, 179 (D.C.Cir.1969). These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community. *See* 18 U.S.C. § 3142(g); *Edson,* 487 F.2d at 372. Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment. *See Alston,* 420 F.2d at 179–80. In the instant case, both parties present persuasive arguments regarding the weight of the evidence. Accordingly, we conclude that this factor does not tip the balance either for or against detention.

Similarly, the factor of alienage, upon which the district court also placed much weight, may be taken into account, but it does not point conclusively to a determination that Motamedi poses a serious risk of flight. *See, e.g., Truong Dinh Hung,* 439 U.S. at 1329; 99 S.Ct. at 18; *Honeyman,* 470 F.2d at 474–75. Motamedi argues that because all of his family's property was confiscated after the fall of the Shah, and his family was forced to flee, he is not free to return to Iran. Moreover, he contends that evidence concerning the present existence of large foreign bank accounts is lacking. Again, both parties present strong arguments on the implications of Motamedi's alienage, and we conclude that the factor does not tip the balance either for or against detention.

The Government argues that Motamedi poses a serious risk of flight because of the additional charges contained in the indictment. Motamedi states that he has known of the investigation into his exporting activities since January 1984. Moreover, he was informed upon his arrest that the Government would seek an indictment on the current charges, but he was nevertheless released on conditions for several weeks before issuance of the indictment. Accordingly, he argues, there is no greater risk that he will flee now than there has been since his arrest and release on conditions. We agree.

Having reviewed the facts, the findings, and the record, we conclude that the grounds upon which the district court based its determination that Motamedi po-

ses a serious risk of flight, and that no condition or combination of conditions will reasonably assure his appearance as required, are insufficient. In this case, the Government has failed to establish by a preponderance of the evidence that Motamedi presents a serious risk of flight. For this reason, the Government's motion for reconsideration is DENIED.

BOOCHEVER, Circuit Judge, concurring and dissenting in part:

While I concur in the result reached by the majority, I write separately to express my disagreement with the majority's analysis of the burden of proof issue. For the reasons explained below, I would hold that the government must show that defendant poses a risk of flight by clear and convincing evidence.

## I. Statutory Analysis

### A. The Majority's Analysis

The majority's interpretation of the statute runs afoul of well established principles of statutory construction. In the absence of clearly expressed legislative intent to the contrary, a statute should be construed to avoid serious constitutional issues: "it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 297, 76 L.Ed. 598 (1932); *see St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981) ("A statute, of course, is to be construed, if such a construction is fairly possible, to avoid raising doubts of its constitutionality."); *Arley v. United Pacific Insurance Co.,* 379 F.2d 183, 188 (9th Cir. 1967); *see also Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341–56, 56 S.Ct. 466, 480–87, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Knapp v. Cardwell,* 667 F.2d 1253, 1260 (9th Cir.), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982); *United States v. Crosson,* 462 F.2d 96, 98 (9th Cir.) ("We start with the premise that it is our duty to uphold, if possible, the constitutionality of

the legislation."), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 569, 34 L.Ed.2d 517 (1972). The majority's adoption of a preponderance of the evidence standard, in the absence of clear legislative direction, places in issue substantial eighth and fifth amendment questions and thereby violates the Supreme Court's "cardinal principle" of constitutional avoidance. Indeed, although it should be unnecessary to reach this issue, I conclude that adoption of the preponderance standard not only raises grave constitutional questions, but also renders the statute unconstitutional.

A close question of statutory construction would be presented if constitutional considerations were ignored. The balance, however, even in that narrow context, favors use of a clear and convincing evidence standard. The majority's analysis starts from the premise that because the statute specifies the clear and convincing standard for facts underlying dangerousness determinations, but is silent as to flight risk determinations, the standards for the two must be different. Congressional silence on the flight risk standard, according to the majority, indicates "legislative intent to incorporate the standard applicable to this determination under the 1966 Act." The majority then concludes, without citing a single case as authority, that the preponderance standard applied under the 1966 Act.

The majority finds support for its construction of the 1966 Act in the fact that the Act provided judges with "a list of factors to consider in reaching their conclusions." 18 U.S.C. § 3146(b) (1982) (repealed in 1984). It is contended that "a balancing approach normally implies utilization of the preponderance standard." This "list of factors" has been carried over in section 3142(g) of the 1984 Act. To conclude that this balancing approach indicates a preponderance standard for proof of the facts underlying the flight risk decision, however, contradicts the language and structure of the statute. Under the statute, the determination that a defendant is too dangerous to release involves the

same weighing of factors as the flight risk decision. *See* 18 U.S.C. § 3142(g). Yet the majority admits that a clear and convincing standard rather than a preponderance standard applies to the dangerousness determination. Thus the "weighing" process, by the majority's own admission, does not indicate a preponderance of the evidence standard. Nor do I agree with the majority's unsupported statement that the statutory reasons to be considered for flight risk are any less "specific and quantifiable" than those for danger to the community.

The majority also dismisses repeated emphasis by Supreme Court Justices sitting as Circuit Justices that bail should be denied "only for the strongest of reasons." *Sellers v. United States*, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (Black, Circuit Justice 1968) (quoted in *Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329, 99 S.Ct. 16, 18, 58 L.Ed.2d 33 (Brennan, Circuit Justice 1978)), and in *Harris v. United States*, 404 U.S. 1232, 1232, 92 S.Ct. 10, 10, 30 L.Ed.2d 25 (Douglas, Circuit Justice 1971). The majority states, without citation or further analysis, that this rule "pertains to the nature of the permissible factors to be utilized in denying an application for bail, not to the quantum of proof required to establish the presence of such factors." A reading of the cases cited reveals that the opposite is true. *See, e.g., Truong Dinh Hung*, 439 U.S. at 1329–30, 99 S.Ct. at 18 (reversing denial of bail not because reasons advanced by government were not "permissible factors" for consideration, but because all government evidence did not sufficiently establish flight risk). As the majority admits, "[d]oubts whether [bail] should be granted or denied should always be resolved in favor of the defendant." *Herzog v. United States*, 75 S.Ct. 349, 351, 99 L.Ed. 1299 (Douglas, Circuit Justice 1955); *see United States v. McGill*, 604 F.2d 1252, 1255 (9th Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). Although the Supreme Court has never articulated the standard of proof applicable to detention decisions, these oft-repeated statements strongly imply that the standard must be higher than a mere preponderance.

## B. Existing Case Law

The reported opinions have split on the issue whether the government must prove factors underlying a conclusion of flight risk by clear and convincing evidence. While I do not lightly discount those opinions agreeing with the majority, I find them unpersuasive. None of them attempts to analyze the structure of the statute, to examine its legislative history, or to consider the constitutional problems raised by the statute. Their statements regarding the burden of proof either are dicta, are unsupported by any citation, or rely solely on the proposition that the preponderance of the evidence standard applies to other pretrial decisions and should therefore apply to this pretrial determination. This last rationale is inapplicable because the decisions cited as supporting it, *United States v. Matlock*, 415 U.S. 164, 177–78 & n. 14, 94 S.Ct. 988, 996–97 & n. 14, 39 L.Ed.2d 242 (1974) (voluntariness of consent search), and *Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972) (voluntariness of confession), concern the admissibility of evidence at trial, not an immediate deprivation of the defendant's liberty. *Matlock* and *Lego* did not raise or resolve the serious due process questions inevitable in a detention decision, and thus are not on point.

I note that a number of the decisions agreeing with my position that the clear and convincing evidence standard applies to proof of facts underlying the flight risk determination are also dicta, or are based on a very cursory analysis of the statute. I therefore conclude that thus far the reported cases present no convincing weight of authority on either side of this issue. *Compare United States v. Williams*, 753 F.2d 329, 332 (4th Cir.1985) (government has burden of showing clear and convincing evidence on facts supporting flight risk: dicta); *United States v. Moore*, 607 F.Supp. 489 note 10 (N.D.Cal.1985) (clear and convincing: flight risk at issue); *United States v. Jones*, 614 F.Supp. 96 (E.D.Pa.

1985) (Hall, U.S. Magistrate) (clear and convincing: unclear whether dicta or holding); *United States v. Beesley*, 601 F.Supp. 82, 83 (N.D.Ga.1984) (clear and convincing: flight risk at issue); *United States v. Payden*, 598 F.Supp. 1388, 1397 (S.D.N.Y.1984) (same); *and United States v. Aiello*, 598 F.Supp. 740, 741 n. 1, 746 (S.D.N.Y.1984) (same) *with United States v. Orta*, 760 F.2d 887, 891 n. 20 (8th Cir.1985) (preponderance standard applies: relying on rationale that burden applicable to other pretrial decisions is preponderance of the evidence); *United States v. Chimurenga*, 760 F.2d 400, 405–06 (2d Cir.1985) (same: citing *Matlock* and *Lego* ); *United States v. Freitas*, 602 F.Supp. 1283, 1293 (N.D.Cal.1985) (same: citing *Matlock* and *Lego* ); *and United States v. Kouyoumdjian*, 601 F.Supp. 1506, 1509 (C.D.Cal.1985) (same).

### C. The Statutory Framework and the Legislative History

I agree with the majority that one possible inference to be drawn from the 1984 Act's explicit provision of the burden of proof for dangerousness and silence on the burden for flight risk is that the two burdens are different. Another possible inference, however, is that the two standards are the same but that Congress believed it necessary to state explicitly the standard for the new dangerousness provision, because the clear and convincing evidence standard for the flight risk determination would carry over from prior law. The proper method of determining whether Congress intended two different standards, and what standard Congress believed applied to flight risk under former law, is to look at the legislative history. The majority barely acknowledges the legislative history and makes no attempt to analyze it.

The legislative history of the 1984 Act's pretrial detention provisions pertains almost exclusively to the dangerousness provisions. *See generally* S.Rep. No. 225, 98th Cong., 2d Sess. 3–25, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3184–3208 [hereinafter cited as 1984 Report]; S.Rep. No. 98–147, 98th Cong., 1st Sess. 18–52 (1983) (report on S. 215, an earlier and substantially similar version of 1984 Act) [hereinafter cited as 1983 Report]. This is unsurprising since the dangerousness provisions were a radical and controversial change in the law. *See Chimurenga*, 760 F.2d at 403; 1984 Report, *supra*, at 3185–88; 1983 Report, *supra*, at 1–2; *see generally* Duke, *Bail Reform for the Eighties: A Reply to Senator Kennedy*, 49 Fordham L.Rev. 40 (1980); Kennedy, *A New Approach to Bail Release: The Proposed Federal Criminal Code and Bail Reform*, 48 Fordham L.Rev. 423 (1980); Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell*, 56 Va.L.Rev. 371 (1970); Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum.L. Rev. 328 (1982) [hereinafter cited as *Historical Perspectives* ]; Standards for Criminal Justice Standard 10–5.9 commentary at 10.103 to 10.109 (1982) [hereinafter cited as Standards]. The legislative history is not totally silent, however, as to the relative significance of dangerousness and flight risk. Both Senate reports on the bail reform measure state that section 3142 "places the consideration of defendant dangerousness on an equal footing with the consideration of appearance." 1984 Report, *supra*, at 3195; 1983 Report, *supra*, at 39. This language suggests that Congress believed that its explicit provision for the burden of proof on dangerousness factors paralleled the current (and continued) standard for proof on flight risk factors.

Moreover, to conclude as the majority does that facts underlying a conclusion on flight risk need only be established by a preponderance of the evidence while facts supporting a dangerousness conclusion must be shown by the tougher clear and convincing evidence standard is to suggest that Congress considered flight risk of more importance than dangerousness, a conclusion unsupported by the Act and contradicted by the legislative history's emphasis on the gravity of the dangerousness problem. While I do not minimize the importance of having defendants answer for

their offenses, that principle is not stronger than the need of protecting society from acts of violence. It is illogical to require clear and convincing evidence for pretrial incarceration for the latter while holding that the societal interest in preventing flight is met by a mere preponderance of evidence.

I therefore conclude from the structure of the statute and its legislative history that the government must show facts supporting a conclusion of flight by the same burden of proof applicable to facts supporting a conclusion of dangerousness: clear and convincing evidence.

This conclusion is supported by the constitutional analysis set forth below, because in construing federal statutes we should assume that Congress intended to enact a constitutional law and, if more than one construction is possible, construe the statute to avoid constitutional problems. *See United States v. Clark*, 445 U.S. 23, 33–34, 100 S.Ct. 895, 903, 63 L.Ed.2d 171 (1980); 2A N. Singer, *Sutherland Statutory Construction* § 45.11, at 46 (4th ed. 1984) ("fact that one among alternative constructions would involve serious constitutional difficulties is reason to reject that interpretation in favor of another").

## II. Constitutional Questions

The majority makes no attempt to analyze the constitutional ramifications of its decision. Such an analysis is essential for two reasons. First, the nature of the pretrial detention determination requires that it must comport with the somewhat mysterious terms of the eighth amendment, and with the fifth amendment's familiar command that no person shall be deprived of liberty without due process of law. Second, the legislative history of the 1984 Act indicates that in drafting the Act, Congress considered the constitutional questions at length and viewed them as limiting Congress' power to restrict or deny pretrial release. *See* 1983 Report, *supra*, at 2–11. Thus, in addition to the usual considerations for weighing constitutional mandates in construing legislation, in this case the court must analyze the statute in light of the specific congressional intent that the legislation be construed as limited by the constitutional provisions.

### A. The History of the Bail Provisions

The eighth amendment provision that "[e]xcessive bail shall not be required" seems the logical starting point for analysis of a pretrial detention statute. It has often been suggested that this phrase by necessary implication grants a right to pretrial bail. *See, e.g.,* Tribe, *supra,* at 399; *Historical Perspectives, supra,* at 335–36; Standards, *supra,* 10–5.9 commentary at 10.107; *United States v. Edwards,* 430 A.2d 1321, 1325–31 (D.C.App.1981) (rejecting this argument by defendant after detailed analysis of history of eighth amendment and statutory bail provisions), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *cf. Carlson v. Landon,* 342 U.S. 524, 556–58, 72 S.Ct. 525, 542–43, 96 L.Ed. 547 (1952) (Black, J., dissenting); *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1951). While the Supreme Court has never squarely ruled whether the eighth amendment grants an absolute right to bail in criminal cases, the weight of authority appears to be that it does not. *See, e.g., Carlson,* 342 U.S. at 545–56, 72 S.Ct. at 536–37 (deportation proceedings); *United States v. Miller,* 589 F.2d 1117, 1135 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *United States v. Abrahams,* 575 F.2d 3, 5–8 (1st Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *United States v. Kirk,* 534 F.2d 1262, 1281 (8th Cir.1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *Freitas,* 602 F.Supp. at 1286–87; *Kouyoumdjian,* 601 F.Supp. at 1511; *Edwards,* 430 A.2d at 1325–31; 1 J. Cook, *Constitutional Rights of the Accused: Pretrial Rights* § 82, at 464 (1972); Kennedy, *supra,* at 425; Tribe, *supra,* at 399; *Historical Perspectives, supra,* at 336–37; Standards, *supra,* 10–1.1 commentary at 10.10.

The more generally accepted and narrower view, upon which Congress based the 1984 Act, is that Congress has a significant degree of discretion over pretrial detention

and release and the conditions thereof, but that that discretion is limited by the eighth amendment and by due process considerations. Under this theory, Congress has discretion to determine bailable and non-bailable offenses. The eighth amendment prohibits the imposition of excessive bail for a defendant charged with a bailable offense as determined by Congress, and due process requires that a defendant be informed of the specific charges against him, that he be granted a prompt hearing before a judicial officer for substantiation of the charges and determination of the propriety of bail or release, and that the government prove the charges and factors supporting the release or detention decision. *See Edwards*, 430 A.2d at 1326–31; *Freitas*, 602 F.Supp. at 1286–93; 1984 Report, *supra*, at 3190–91; 1983 Report, *supra*, at 2–11; J. Cook, *supra*, at 464; *see also Historical Perspectives, supra*, at 335–46 (arguments for narrow and liberal rights to bail). Under this narrow view of bail rights, the crucial question becomes how much process is due in bail proceedings? Or more specifically, in this case, what is the government's burden of proof leading to a decision to release or detain a

defendant? Because I conclude that due process requires that the government offer clear and convincing evidence even under this narrow view of the constitutional rights to pretrial release, I find it unnecessary to consider whether the eighth amendment or due process mandates a broader view of the right to bail.[1]

### B. Due Process Analysis

1. The function of a burden of proof standard

The concept of a burden of proof is embodied in the due process clause, and its function is "to instruct the factfinder concerning the degree of confidence.our society thinks [it] should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring), *quoted in Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). The burden of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance [society] attache[s] to the ultimate decision." *Addington*, 441 U.S. at 423, 99 S.Ct. at 1808. There are three generally recognized levels

---

**1.** The "presumption of innocence" has often been suggested as another constitutional principle granting a right to pretrial release. This theory is based on dictum in *Stack*, 342 U.S. at 4, 72 S.Ct. at 3: "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." Whatever validity this language linking pretrial release and the presumption of innocence may have had was seriously undermined by language in another Supreme Court case, *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447 (1979), which stated that "[t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials," and "has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun." *Bell* concerned the conditions of concededly lawful detention, not the actual decision to detain, *id.* at 533–34, 99 S.Ct. at 1870–71, but the weight of authority appears to agree with *Bell*'s conclusion that an argument against pretrial detention may not be based on the presumption of innocence. *Compare Freitas*, 602 F.Supp. at 1291–92 (*Bell* precludes this argument); *Payden*, 598 F.Supp. at 1397 (rejecting argument on rationale that if valid it would

preclude all pretrial detention, *citing United States v. Kostadinov*, 721 F.2d 411, 413 (2d Cir. 1983) (per curiam)); 1983 Report, *supra*, at 13–14 (same rationale); 2 W. LaFave & J. Israel, *Criminal Procedure*, § 12.2, at 122 & n. 10 (1984) (citing *Bell*); *and* Unif.R.Crim.P. 341 commentary at 77–78, 10 U.L.A. 77–78 (1974) (only viable challenge is under due process) *with Van Atta v. Scott*, 27 Cal.3d 424, 441, 613 P.2d 210, 219, 166 Cal.Rptr. 119, 158 (1980) (presumption of innocence supports placing burden of proof on government at detention hearings); Tribe, *supra*, at 403–05; *and Historical Perspectives, supra*, at 358–59. For further explanation of the Supreme Court's view of the function of the presumption of innocence at trial, see *Taylor v. Kentucky*, 436 U.S. 478, 483 & n. 12, 98 S.Ct. 1930, 1933 & n. 12, 56 L.Ed.2d 468 (1978) (presumption is "shorthand description" of "prosecution's duty both to produce evidence of guilt and to convince the jury beyond a reasonable doubt").

Because I conclude below that due process considerations require application of the clear and convincing standard in this case, I find it unnecessary to decide whether the presumption of innocence may be an alternative valid basis for my conclusions.

of the burden of proof. Under the preponderance of the evidence standard, the litigants equally share the risk of error; this standard is generally applicable in private civil suits, in which society has a minimal interest in the outcome. *Id.* Under the reasonable doubt standard, applicable to criminal trials, society bears almost the entire risk of error, because of the magnitude of the defendant's interest in not being erroneously convicted and subjected to a severe deprivation of liberty. *Id.* at 423–24, 99 S.Ct. at 1808. The intermediate standard of clear and convincing evidence is appropriate in cases in which the individual's interest at stake is "more substantial than mere loss of money" but less substantial than the consequences of a criminal conviction. *Id.* at 424, 428, 99 S.Ct. at 1808, 1810. While the *Addington* Court recognized that burdens of proof are difficult to articulate and quantify, *id.* at 424–25, 99 S.Ct. at 1808–09, it emphasized their significance as a way to "impress the factfinder with the importance of the decision," *id.* at 427, 99 S.Ct. at 1810. Under the *Addington* analysis, the proper burden of proof is determined by weighing the magnitude of the societal and individual interests at stake in the determination, and assigning the risk of error accordingly. *Id.* at 425–27, 99 S.Ct. at 1809–10.

2. The defendant's interests in the release determination

The defendant has a basic and significant liberty interest in not being confined pending trial. This interest encompasses more than the fundamental loss of freedom for the pretrial period. *See Historical Perspectives, supra,* at 329 n. 11. "Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975) (fourth amendment analysis). Pretrial detention may hamper the preparation of a defense by limiting the defendant's access to his attorney and to potential witnesses for the defense. *Stack,* 342 U.S. at 4, 72 S.Ct. at 3; *Van Atta v. Scott,* 27 Cal.3d 424, 435–36 & n. 9, 613 P.2d 210, 215 & n. 9, 166 Cal.Rptr. 149, 154

& n. 9 (1980) (analyzing California pretrial detention/release statute under federal and state law); *Kennedy, supra,* at 425. It may also result in permanent stigma and loss of reputation to the defendant. *Van Atta,* 27 Cal.3d at 440, 613 P.2d at 218, 166 Cal.Rptr. at 157.

The magnitude of these concerns is increased by the fact that the injuries consequent upon pretrial confinement may not be reparable upon a subsequent acquittal. Society has no mechanism to recompense an individual for income lost or damages to a career due to pretrial confinement. Nor do we compensate the individual and his family for their mental suffering and loss of reputation due to pretrial incarceration. As the California court noted in *Van Atta,* "[p]retrial imprisonment is likely to be mistaken for a finding of the detainee's guilt rather than being recognized [by the community] as his inability to make bail or persuade the judge that he would appear at future proceedings." *Id.* at 440, 613 P.2d at 218, 166 Cal.Rptr. at 157.

A subtler consequence of pretrial detention is that it may set up a conflict between the defendant's desire and right to provide himself with the best defense possible and his desire to escape the unpleasantness of pretrial confinement as soon as possible. For an example of some constitutional yet undeniably disagreeable conditions of pretrial confinement, *see Bell v. Wolfish,* 441 U.S. 520, 524–28 & n. 7, 99 S.Ct. 1861, 1866–68 & n. 7, 60 L.Ed.2d 447 (1979) (double-bunking in one-man cells, limited access to phones, prohibition on receipt of packages or use of personal typewriters, cell searches outside prisoners' presence, interference with prisoner mail, body cavity searches after contact visits, and use of common rooms to provide temporary sleeping arrangements).

Theoretically, pretrial deprivation of liberty is limited in duration by both the sixth amendment right to a speedy trial and by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982). The Act in particular seems to limit pretrial detention to a seventy-day

deprivation of liberty. 18 U.S.C. § 3161(c)(1). In computing Speedy Trial Act time limits, however, periods of delay attributable to defense requests for continuances, to time during which the trial court is considering any pretrial motion, or to time during which an interlocutory appeal is pending, are excluded from the seventy-day limit. 18 U.S.C. § 3161(h). Thus an incarcerated defendant may be forced to choose between prolonging his period of detention and foregoing motions, interlocutory appeals, or investigations requiring continuances, which could significantly increase his chance of an acquittal.

I conclude therefore that the defendant's interest in not being erroneously confined pending trial is of substantial importance. While it is not as great as his interest in not being erroneously convicted, it is certainly far more important than "mere loss of money," *see Addington,* 441 U.S. at 424, 99 S.Ct. at 1808.

3. Society's interests in the release determination

I do not question that society's interest in assuring the presence of the defendant at trial is significant, nor that the detention of a defendant who poses a genuine risk of flight is valid. *See Stack,* 342 U.S. at 4, 72 S.Ct. at 3 (right to bail "conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty"); *Reynolds v. United States,* 80 S.Ct. 30, 32, 4 L.Ed.2d 46 (Douglas, Circuit Justice 1959) ("purpose of bail is to insure the defendant's appearance"); *Tribe, supra,* at 397 (recognizing the government's "special interest in securing the presence of the accused at trial"); *Historical Perspectives, supra,* at 331 (if defendant poses substantial flight risk, "the state's interest in assuring the integrity of the judicial process outweighs the defendant's interest in pretrial liberty"). Societal concerns, however, do not all militate toward lowering the burden of proof and thus increasing the probability of detention decisions. Society has no interest in confining a defendant who is not a flight risk. *Cf. Addington,* 441 U.S. at 426, 99

S.Ct. at 1809 (society has no interest in confining individuals who are not mentally ill). Not only does such a confinement not benefit society, it actually harms society because confinement is extremely costly. *See Van Atta,* 27 Cal.3d at 436–37, 613 P.2d at 215–16, 166 Cal.Rptr. at 154–55; *see also Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972) (noting in introduction to due process analysis of parole revocation proceedings that parole alleviates costs to society of keeping individual in prison). As the *Addington* Court stated in the context of civil commitments, "Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings." *Addington,* 441 U.S. at 426, 99 S.Ct. at 1809.

4. Balancing the interests

As demonstrated above, the consequences to the defendant from an erroneous pretrial detention are certain and grave. The potential harm to society, although also significant, is speculative, because pretrial detention is based on the possibility, rather than the certainty, that a particular defendant will fail to appear. Moreover, society's interest in increasing the probability of detention is undercut by the fact that it has no interest in erroneously detaining a defendant who can give reasonable assurances that he will appear. I conclude therefore that the injury to the individual from an erroneous decision is greater than the potential harm to society, and that under *Addington* due process requires that society bear a greater portion of the risk of error: the government must prove the facts supporting a finding of flight risk by clear and convincing evidence.

CONCLUSION

Because of its use of the preponderance standard, the majority is forced into a most delicate analysis of the evidence. By skillfully marshalling arguments it is able to

conclude that on essential issues the weight is in equipoise or at least that a preponderance does not tip the scales in the government's favor. I need resort to no such legerdemain. The majority's reasoning establishes that the government has failed to prove likelihood of flight by clear and convincing evidence.

Rafeedie, District Judge, filed concurring opinion.