**UNITED STATES of America,
Plaintiff,**

v.

**Samih Fadl JAMAL, Defendant.**

**No. CR–03–0261–1–PHX–FJM.**

United States District Court,
D. Arizona.

Dec. 4, 2003.

Kevin M. Rapp, U.S. Attorney, U.S. Attorney's Office, Phoenix, AZ, for Plaintiff.

Michael S. Reeves, Esq., Law Office of Michael S. Reeves, Phoenix, AZ, Michael John Smith, Gonzalez & Smith PC, Mesa, AZ, for Defendant.

**ORDER**

MARTONE, District Judge.

The court has before it the Government's Motion For Review of Magistrate Judge's Release Order (doc. 236), the Supplemental Motion, Defendant's Response, and the Government's Reply. We held a hearing on November 24, 2003, to review the issues. We now grant the Government's Motion and order that Defendant Samih Fadl Jamal be detained pursuant to 18 U.S.C. § 3142(e).

## I. Introduction

The issue in this pretrial detention proceeding is whether any "condition or combination of conditions will reasonably assure the appearance of the [defendant] as required." 18 U.S.C. § 3142(e). The burden of proof, by a preponderance of the evidence, lies with the Government. *United States v. Motamedi*, 767 F.2d 1403 (9th Cir.1985). However, the "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 18 U.S.C. § 3142(f).

Our consideration of the issues is guided by the factors set forth in 18 U.S.C. § 3142(g), including (1) the nature and the circumstances of the offense charged, (2) the weight of the evidence against the person and (3) the history and characteristics of the person. The history and characteristics of the person to be evaluated include, *inter alia*, the person's family ties, employment, financial resources, community ties, past conduct, and criminal history. 18 U.S.C. § 3142(g).

## II. The Offense Charged

The Defendant, Samih Fadl Jamal, has been indicted for Conspiracy to Commit Interstate Transportation and Receipt of

Stolen Property in violation of 18 U.S.C. § 371, Interstate Transportation and Receipt of Stolen Property in violation of 18 U.S.C. §§ 2314 and 2315, Aiding and Abetting the Interstate Transportation and Receipt of Stolen Property in violation of 18 U.S.C. § 2, False Statements in violation of 18 U.S.C. § 1001, and Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h).

Factually speaking, Jamal is charged with leading a large fencing operation that generates millions of dollars per year. This alleged operation involved a number of co-conspirators across the country, the object being to steal or fraudulently obtain baby formula at low cost in order to sell the formula at a high profit. The indictment alleges that the estimated profit from the conspiracy is $11 million. The indictment does not allege any crime of violence or any drug-related crimes.

If Jamal is convicted of all the charges, he runs the risk of lengthy incarceration. For example, the Government argues that, if Jamal is convicted of a single count of Interstate Transportation of Stolen Property, the Sentencing Guidelines would mandate a sentence of 14 to 17 years.

### III. The Weight of the Evidence

At this procedural juncture, it is difficult to assess the weight of the evidence against Jamal. However, we note that the Government has proffered evidence that Jamal was under electronic surveillance for a substantial period of time. The records of this electronic surveillance appear to contain incriminating statements by Jamal. We also note that the Government intends to present the testimony of cooperating witnesses including some of Jamal's alleged co-conspirators. The Government has also indicated that an undercover agent participated in some of Jamal's oper-

ations, and that video surveillance accompanied the agent's participation.

### IV. The History and Characteristics of the Defendant

Jamal is a thirty-four year old naturalized United States citizen. He was born in Lebanon. He maintains his Lebanese citizenship. He came to the United States in 1992 and earned a degree in Business Administration from Marshal University in Huntington, West Virginia in 1993. Jamal has lived in the Phoenix area since 1996.

Jamal's wife Gretchen and their five children live in Phoenix. However, Gretchen and the children did live in Lebanon (without Jamal) from 1996 to 1999. Jamal's mother and three of his brothers also live in the Phoenix area. Another of Jamal's brothers lives in Texas. His father and remaining three siblings live in Lebanon.

Jamal has only minimal assets in the United States. He has an interest in several houses in the Phoenix area. However, he has only minimal equity in those properties. In contrast, Jamal owns at least $500,000 in unencumbered property in Lebanon.

Jamal's primary assets and sole sources of employment in the United States were his business operations. However, these have mostly been confiscated by the Government because his business operations are the basis for the indictment. Thus, Jamal has lost his primary source of income in the United States.

Jamal faces the prospect of denaturalization. The U.S. Attorney's Office has already initiated denaturalization proceedings against Jamal. If these proceedings result in actual denaturalization, Jamal will likely be deported. Thus, Jamal faces the prospect not only of prison, but of deportation even after he has served his sentence.

Jamal was previously convicted of one misdemeanor count of aiding and abetting the distribution and misbranding of infant formula. He was sentenced to three years of probation. Initially, Jamal was indicted on thirty-three felony counts. We note that during the prosecution of that case, Jamal did not flee. This time, however, Jamal's business operations have been almost completely shut down, he faces more serious allegations (e.g., that he was the leader of the conspiracy), a more serious sentence, an additional sixty-three count state indictment and, equally importantly, denaturalization and deportation.

The evidence also demonstrates that Jamal has made plans to return to Lebanon in the future. He has substantial assets in Lebanon, including at least $500,000 of real property. In one recorded conversation, he explained to another that, "If you make money keep it overseas not here...If you make one hundred thousand dollars, take twenty thousand and send them to Lebanon. You can establish any business in Lebanon." Government's Motion, Exhibit 23.[1] In fact, Jamal does have concrete, ongoing, business interests in Lebanon and the Middle East.

While there is no evidence of a date certain on which Jamal was to return to Lebanon, his plans were more than preliminary. He has made preparations to run for political office in Lebanon. He has organized charitable activities in order to generate a good reputation, apparently for the sake of his political future. He even directed an assistant to contact the U.S. Department of State to ascertain the legal implications of holding political office in Lebanon. In short, Defendant has concrete plans to return to Lebanon and to live in Lebanon, and he has been preparing for that move for quite some time.

In fact, little over a month before his arrest, Defendant told an associate that he would leave the United States if the Government ever sought to collect certain taxes from him. He explicitly told an associate that, if the government attempted to collect taxes, he would abandon his U.S. assets and "take off to Lebanon." Government's Motion, Exhibit 23.

## V. Discussion and Conclusion

■ We are aware that pretrial detention was intended for unusual cases, and that such detention is to be imposed only where "no condition or combination of conditions will reasonably assure the appearance" of the person required. We conclude, however, that this is such an unusual case. Jamal is accused of being the leader of a large interstate conspiracy involving theft and money laundering. He has relatively few assets in the United States and more substantial assets in Lebanon. He has made plans and preparations to return to Lebanon, and even to run for political office in that country. Only a month before his arrest, he declared a willingness to abandon his U.S. assets and flee to Lebanon when faced with prosecution. The U.S. has no extradition treaty or agreement with Lebanon. While Jamal does have family ties to the U.S., his family has also demonstrated a willingness to live in Lebanon (which they did, without Jamal, between 1996 and 1999). Jamal faces considerable prison time, denaturalization and deportation. In view of all of these circumstances, we conclude that no condition or combination of

---

1. Counsel for Defendant has argued that these recordings should not be considered. However, when given the opportunity to challenge the veracity of these recordings, Defendant declined to do so. Because the rules of evidence do not apply to pretrial detention hearings, and because we find the electronic recordings to be reliable, we consider them.

conditions will reasonably assure Jamal's presence at trial.

Therefore, **IT IS ORDERED GRANTING** the Government's Motion and vacating the Magistrate Judge's order of September 30, 2003. **IT IS FURTHER ORDERED DETAINING** the defendant under 18 U.S.C. § 3142(e).